581 A.2d 937

Charles J. EGENRIEDER, Administrator of the Estate of Robert A. Egenrieder, Deceased; Charlotte J. Clair, Administratrix of the Estate of Joyce E. Clair, Deceased; Joyce E. Fleske, Administratrix of the Estate of Vicky Ann Fleske, Deceased; Jacqueline M. Snyder, Administratrix of the Estate of Gregory M. Snyder, Deceased; and all others Similarly Situated, Appellants,

v.

The OHIO CASUALTY GROUP, West American Insurance Company, and Ohio Casualty Insurance Company.

Superior Court of Pennsylvania.

Argued Jan. 17, 1990.

Filed Oct. 16, 1990.

Richard C. Angino, Harrisburg, for appellants.

Steven D. Snyder, Harrisburg, for appellees.

Before ROWLEY, FORD ELLIOTT and HOFFMAN, JJ.

FORD ELLIOTT, Judge:

This appeal arises from a class action suit, brought against certain providers of motor vehicle insurance, seeking post-mortem work loss benefits under the former Pennsylvania No–Fault Motor Vehicle Insurance Act.[1]

It is undisputed that the availability of work loss benefits under the No–Fault Act has been interpreted to include benefits that become payable upon the death of the insured. The Pennsylvania Supreme Court, in *Allstate Insurance Company v. Heffner*, 491 Pa. 447, 421 A.2d 629 (1980), affirmed an earlier decision of this court which determined that the *survivors* of persons whose death resulted from the use or maintenance of a motor vehicle were entitled to such work loss benefits. In addition, the Pennsylvania Supreme Court, in *Freeze v. Donegal Mutual Insurance Company*, 504 Pa. 218, 470 A.2d 958 (1983), determined that the estates of decedent insureds were also entitled to post-mortem work loss benefits. In *Freeze*, that court stated:

> It follows then that, if work loss benefits do not terminate upon the death of a deceased victim, absent a statutory bar, those benefits are recoverable by the Deceased victim's estate. This is the natural, logical and compelling extension of our holding in *Heffner*. Upon a close and careful examination of the No–Fault Act, we

---

1. Act of July 19, 1974, P.L. 489, No. 176, § 101, *et seq.*, 40 P.S. § 1009.101, *et seq.* repealed by Act of February 12, 1984, P.L. 26, No. 11 § 8(a), effective October 1, 1984.

find no language which precludes the recovery of work loss benefits to the estate of a deceased victim.

*Freeze, supra,* 504 Pa. at 222, 470 A.2d at 960. The maximum entitlement to work loss benefits was determined, by statute, to be $15,000.

## II

Following a hearing on plaintiffs' motion for class certification, the Court of Common Pleas for Dauphin County, by order dated June 3, 1986, certified this case as a class action consisting of three subclasses, and identified Charles J. Egenreider and Joyce Fleske as representative plaintiffs. The three sub-classes created by the trial court were defined as follows:

(1) The first subclass shall consist of the estates of all decedents insured under policies of no-fault insurance issued by defendants whose deaths occurred as a result of the maintenance and use of a motor vehicle within Pennsylvania on or after May 16, 1981. The subclass shall also include the estates of such decedents who are residents of Pennsylvania and who died as a result of the maintenance and use of a motor vehicle outside of Pennsylvania during that period.

(2) The second subclass shall consist of the estates of all previously employed decedents who are Pennsylvania residents insured under the policies of no-fault insurance issued by defendants and sustained their fatal injuries as a result of the maintenance and use of a motor vehicle, whether within or outside of Pennsylvania, during the period from November 16, 1977, to November 15, 1979.

(3) The third subclass shall consist of the estates of all previously employed decedents who are Pennsylvania residents insured under policies of no-fault insurance issued by defendant, whose fatal injuries were sustained as the result of the maintenance and use of a motor vehicle, whether within or outside of Pennsylvania, prior to November 16, 1977, and whose estates

received any no-fault payments from November 16, 1977, to November 15, 1979, as a result of decedent's death.

The three subclasses shall further be limited to those estates which have not yet been paid work loss benefits.

The three subclasses shall further be limited to those estates whose decedents did not recover work loss benefits to the amount of $15,000 prior to their deaths.

Subsequent to the June 3, 1986, order defining the class as set forth above, several motions were filed to amend the subclasses. On June 16, 1986, the plaintiffs filed a motion requesting the court to expand subclasses two and three by removing the time limitations set forth in the class. The motion was denied by the trial court whose decision subsequently was affirmed by this court on appeal. *Egenrieder v. Ohio Casualty Group*, 365 Pa.Super. 400, 529 A.2d 1118 (1987). On June 27, 1986, defendants filed a motion to amend the class by severing defendant West American Insurance Company, defendant Ohio Casualty Group, and plaintiff Charles Egenrieder from the suit. The trial court granted this motion and following an appeal by plaintiffs, this court affirmed by order on December 1, 1987. Following this court's affirmance of the order severing Charles Egenrieder from the suit, the sole remaining class representative was Joyce Fleske.

On September 18, 1987, defendant filed a motion to revoke class certification on the grounds that the only remaining representative plaintiff was barred by the statute of limitations. In response, petitions to intervene were filed by: J. Paul Haldeman; Roy W. Roddy; Paul H. Clark; Donald Harlacker; Mary Armstrong, and Grace T. Brennan. A hearing was held on the petitions to intervene on December 12, 1988, at the conclusion of which, argument was heard on the motion to revoke class certification.

In an opinion dated May 16, 1989, the trial court found that the claim of the sole remaining representative plaintiff was barred by the statute of limitations. The court deter-

mined that pursuant to the decision of the Pennsylvania Supreme Court in *Cunningham v. Insurance Company of North America*, 515 Pa. 486, 530 A.2d 407 (1987), *cert. denied*, 484 U.S. 1008, 108 S.Ct. 704, 98 L.Ed.2d 655 (1988), the prior class action of *Nye v. Erie Insurance Exchange*, 504 Pa. 3, 470 A.2d 98 (1983), only tolled the statute of limitations as to Erie Insurance Exchange.

> Since the *Nye* action does not toll the statute on Fleske's claim against Ohio Casualty and there is no action to toll the statute, Fleske's claim exceeds the four year statute of limitations provided in the No–Fault Act, 40 P.S. § 1009.106(c), and thus is time-barred.

Trial court opinion, 5/16/89 at 3. After dismissing Fleske's claim pursuant to the above, the trial court considered the petitions for intervention.

The trial court considered each of the five petitions [2] to intervene separately on its merits.

The trial court denied the petition to intervene of J. Paul Haldeman. The court found that the petitioner failed to establish the domicile of the decedent at the time of her death and as such did not sustain his burden of proving all of the allegations in his petition to intervene.

The trial court denied the petition to intervene of Mary Armstrong. The court found that the petitioner failed to establish that the decedent was insured by defendant at the time of her death, and as such did not sustain her burden of proving all of the allegations in her petition to intervene.

The court denied the petitions to intervene of Roy W. Roddy and Paul H. Clark. The court found that the decedent's estates that are represented by petitioners already have received $15,000 in post-mortem work loss benefits, and as such are not members of the class as described in the class certification order.

The court concluded that since the claim of the sole remaining representative plaintiff was found to be time-

---

2. The sixth petition to intervene, filed by Grace Brennan, was withdrawn.

barred and hence invalid, and since none of the petitions to intervene were determined to be viable, there was no longer a party in the role of representative plaintiff and therefore defendant's motion should be granted in toto. Petitioners timely filed this appeal to the above orders.[3]

On appeal, appellants allege that the trial court erred in denying the petitions to intervene, of Haldeman, Armstrong, Roddy and Clark.[4] Appellants also claim that since one or more of the above petitions were valid, there existed a representative plaintiff to lead the class action suit. Therefore, appellant argues that the trial court also erred in revoking class certification.

### III

We first consider this court's role in reviewing the denial of the petitions to intervene filed by Haldeman, Armstrong, Roddy, and Clark.

■ The initial issue to be decided is whether the orders denying the petitions were final and therefore appealable. If they are not, the appeals must be quashed. The decision as to whether to quash an appeal as interlocutory is often done without reference to the merits of the case since the very nature of many orders are obviously non-final. However, in some cases, including the one which we now consider, the decision whether to quash is intertwined with a consideration of the merits. This is due to the fact that the "finality and therefore the appealability of the orders is a

3. At this juncture, we note a procedural defect in this appeal. Counsel for appellants filed only one notice of appeal, listing all appellants at No. 327 Hbg.1989, from the May 16, 1989, order of the trial court. This is in violation of Pa.R.A.P. 512. This is not a *joint appeal.* The trial court entered separate orders denying each petitioner-appellant's motion to intervene on different grounds. A separate appeal was required to be filed by each petitioner-appellant and the appeals would have been subject to consolidation for briefing and argument under Rule 513. However, we refrain from quashing on the basis of this defect on our own discretion. *See General Electric Corporation v. Aetna Casualty and Surety Company,* 437 Pa. 463, 263 A.2d 448 (1970).

4. Not being pursued in this appeal is the denial of the Petition to Intervene of Donald Harlacker.

judicial conclusion which can be reached only after an examination of its ramifications". *Richards v. Trimbur*, 374 Pa.Super. 352, 358, 543 A.2d 116, 118 (1988) (citations omitted). The rule used to determine the appealability of orders denying a petition to intervene is well established in Pennsylvania.[5] The Pennsylvania Supreme Court has stated:

'[A]s a rule an appeal will not lie from an order refusing leave to intervene, because such an order is not a final one [but] cases may arise where a denial of a petition to intervene would be a practical denial of relief to which the petitioner for intervention is entitled and can obtain in no other way; and in such cases the refusal to permit an intervention is a final order or decree as to the petitioner. *Frey's Estate*, 237 Pa 269, 271, 85 A. 147, 148 (1912).' (citations omitted)

*Scharnitzki v. Bienenfeld*, 368 Pa.Super. 610, 611, 534 A.2d 825, 825 (1987). *Boise Cascade Corporation v. East Stroudsburg Savings Association*, 300 Pa.Super. 279, 281, 446 A.2d 614, 615 (1982), *quoting Frey's Estate*, 237 Pa. 269, 271, 85 A. 147, 148 (1912), it is the examination of the merits which determines whether there has been a practical denial of relief.

The trial court concluded that appellants either were not parties to the class action or in the alternative were not parties entitled to relief. If, upon an examination of the merits, we determine the trial court was correct, the order appealed from was not final as to the parties and therefore not appealable. We now turn to the merits of appellants' petitions to intervene.[6]

5. The propriety of such rules governing interlocutory appeals is established by Pa.R.A.P. 311(a)(7).

6. Appellee asserts that the proper standard of review to begin the analysis of the instant case is set forth in *Wilson v. State Farm Mutual Auto Insurance Company*, 512 Pa. 486, 492, 517 A.2d 944, 947 (1987), which stated: "[i]t is well established that a 'question of intervention is a matter within the sound discretion of the court below and unless there is a manifest abuse of such discretion, its exercise will not be interfered with on review.' (citations omitted)." Appellee is mistaken. The supreme court, in *Wilson*, is not considering whether the

## IV

The determination of who may intervene in an action and when that intervention may be prohibited is determined by Pa.R.C.P. 2327 and 2329. Rule 2327 states:

At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if

(1) the entry of a judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered; or

(2) such person is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or an officer thereof; or

(3) such a person could have joined as an original party in the action or could have been joined therein; or

(4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action.

Appellants contend that it is "beyond dispute" that they are persons who have the right to intervene under 2327(3) and (4).[7] Therefore, argue appellants, the only manner in which they can be excluded from intervening in the suit is by a showing that they fall into one of the three categories set forth in Pa.R.C.P. 2329, which reads as follows:

Upon the filing of the petition and after hearing, of which notice shall be given to all parties, the court, if the allegations of the petitions have been established and are found to be sufficient, shall enter an order allowing intervention; but an application for may be refused, if

orders denying intervention are appealable as we are in the instant case. That determination in *Wilson* was accomplished at the superior court upon the initial appeal. Consequently, if we find that the orders in the instant case *are appealable*, we will continue with an analysis as to whether the trial court committed a manifest abuse of discretion.

7. Appellants do not argue that the facts averred on the petition support intervention under 2327(1) and (2). We also find nothing to support intervention under those sections.

(1) the claim or defense of the petitioner is not in subordination to and in recognition of the propriety of the action; or

(2) the interest of the petitioner is already adequately represented; or

(3) the petitioner has unduly delayed in making application for intervention or the intervention will unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties.

Appellants claim that since none of them are precluded by any of the categories listed above, their right of intervention is assured under Rule 2327. However, the trial court found that none of the appellant-petitioners established that they belong to any of the categories listed in Rule 2327. The core of this dispute is a disagreement over what constitutes the burden of proof necessary to support a petition to intervene under Rule 2327 and how broadly the court may interpret class definitions in a class action when determining petitioner compliance with Rule 2327.

## V

■ We will first discuss the burden of proof issue and its relationship to two of the appellant-petitioners, Haldeman and Armstrong. Appellant-petitioners cite the standard of proof needed to support a petition to intervene under Rule 2327.

Once a petitioner seeking intervention presents a *prima facie* case for intervention, there is no requirement that he prove his case before intervention will be permitted, since otherwise he would be forced to try his case twice.

Standard Pennsylvania Practice 2d, § 14:250, at 412; 8 Goodrich Amram 2d, § 2329:1, at 396 (emphasis added). However, the "prima facie" case that appellant-petitioners refer to is not extended to the court's acceptance of unproven factual allegations when determining the merit of petitions under Rule 2327. "The court is *first required to determine* whether the petitioner comes within one of the classes of persons entitled to intervene. If the petitioner is

not such a person, the court must deny the petition to intervene." 8 Goodrich Amram 2d, § 232.1 at 394 (emphasis added). The language of Rule 2329 itself supports such a conclusion. The rule reads, in part, that "the court, *if the allegations of the petition have been established and are found to be sufficient,* shall enter an order allowing intervention." (emphasis added). By their arguments, appellants are attempting to limit the trial court's discretionary power when deciding the merits of a petition to intervene.

### The Haldeman Petition.

 In order for the Haldeman petition to intervene to be granted, appellant-petitioner must establish as true all allegations properly needed to be included in that category of persons represented by Rule 2327(3) or (4). In order to be included under 2327(3) or (4), appellant-petitioner must be a member of the class acting as plaintiffs in this class action suit. All subclasses of the main class in this suit have as a requirement that the member be a resident of Pennsylvania.[8]

As discussed above, and in the trial court opinion, it is the appellant-petitioner's burden to show that all the requirements of intervention under Rule 2327 are met. The trial court pointed to the fact that Haldeman offered only oral evidence with no supporting documentation. As executor of decedent's estate, Haldeman should have access to such documentation. The court also found that the record suggests that the estate had applied for and received benefits under Delaware law. Additionally, the trial court found the

8. The trial court looks to the No–Fault Act in deciding that the term residence as contained in the class descriptions should be interpreted as domicile. However, since we are determining only the appealability of the orders denying intervention at this point in our analysis, and are not applying an abuse of discretion standard to the trial court's opinion, we only need to consider those portions of the trial court's analysis with which we are in agreement. Since it is not necessary to distinguish between domicile and residence in this case, we will not do so. Therefore, we make no determination as to the propriety of the trial court going outside of the clear language of the class description to interpret an unambiguous term contained therein.

following oral and documentary evidence indicative of non-residency:

> [T]he benefits were paid pursuant to Delaware law, that the policy, the original no-fault application form, and the Acord form all listed a Rehoboth Beach Delaware address, that the car was titled in Delaware, and that the policy was issued as a Delaware policy and was billed as for a Delaware resident. Further, *supporting documents* were submitted showing the cremation bill which had been paid to a Delaware crematory, the Acord form listing the Rehoboth Beach address, and the no-fault application form signed by the decedent's daughter which also lists the Rehoboth Beach address.

Trial court opinion, 5/16/89 at 6 (emphasis added). Following a review of the record, we determine that the question of decedent's residency is, at the least, ambiguous. We therefore determine that Haldeman has failed to establish sufficiently the allegations contained in his petition. His petition to intervene is therefore denied.

### The Armstrong Petition.

■ In order for the Armstrong petition to intervene to be granted, she must establish as true all allegations properly needed to be properly included in that category of persons represented by Rule 2327(3) and (4). In order to be included under 2327(3) or (4), appellant-petitioner must be a member of the class acting as plaintiffs in this class action suit. All subclasses in this suit have a requirement that decedents were insureds of defendant at the time of their death.

Appellee claims that the appellant-petitioner Armstrong introduced no credible evidence to show that decedent was in fact insured by the defendant Ohio Casualty Company. Armstrong's offer of proof included testimony of the decedent's daughter and a claim memorandum. Armstrong claims the trial court erred by not considering the claim memorandum. However, there is nothing in the trial court's opinion to indicate that it had not done so. The trial

court found that Armstrong "produced no evidence to support this claim except her bare hearsay assertions." Trial court opinion, 5/16/89 at 12. Appellee argues that this memorandum is hearsay and as such is inadmissible. However, we need not reach this discussion. Even admitting Armstrong's evidence for consideration, we determine it is insufficient to find that she has carried her burden of establishing that decedent was a member of the class in this suit. Appellee's testimony and documentary evidence is simply the more credible in this case. As appellant Armstrong has failed to establish the allegations contained in her petition for intervention, it must be denied.

## VI

■ The primary issue to be decided concerning the Roddy and Clark petitions is the interpretation of class definitions in a class action suit. It is therefore peculiar to the discussion of class action suits, and does not directly concern either the rules on intervention or the No–Fault Insurance Act.

### The Roddy and Clark Petitions.

The estates represented by Roddy and Clark both have received the full $15,000 in work loss benefits for which they are entitled under the No–Fault Act. In this action they attempt to recover interest on the award and attorney fees claiming the award was not paid in a lump sum thirty days after notice to the insurer. While arguing that they are members of the class in this suit, appellants present evidence of the legislative intent in passing the No–Fault Act, and extensive case history to prove that interest and attorney fees are available for those receiving work loss benefits. We agree. There is no question of the right of decedent's estates to receive interest and attorney fees under the No–Fault Act. However, the question before us is not one concerning the interpretation of the No–Fault Act. The question instead concerns the court's ability to expand the membership of a class in a class action suit.

This court has in the past interpreted class descriptions strictly rather than broadly. *See Egenrieder v. Ohio Casualty Group*, 365 Pa.Super 400, 529 A.2d 1118 (1987). Therefore, we will not expand the class definition in this case by reading into the class action claims for attorney's fees and interest. Appellants were not prohibited from including these claims in their class description at the time the suit was initiated. To include them now would be unjust to appellee. Assuming compliance with the statute of limitations, Roddy and Clark, as well as any others with a claim of this type, can bring suit. We determine only that it can not be done in this action. As appellants Roddy and Clark are excluded from the existing definition of class membership in this case, their petitions to intervene in the instant action are denied.

## VII

Having examined the merits of the petitions to intervene, we agree with the trial court that none are sufficient to establish a right of intervention under Pa.R.C.P. 2327. Therefore, the denial of the petitions by the trial court does not operate as a practical denial of relief obtainable in no other way. Thus, having determined that the orders are not final as to the appellant-petitioner, we quash these appeals. *See Frey's Estate, supra.*

As the sole representative plaintiff has been dismissed from this suit and no petition to intervene has been allowed, the trial court's order revoking class certification is affirmed.

Orders affirmed.