J-S71016-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN RE D.A.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF S.T.R., MOTHER | : | |
| | : | No. 1310 MDA 2014 |
| | : | |

Appeal from the Order entered July 11, 2014
in the Court of Common Pleas of Berks County
Orphans' Court Division, at No. 83403

| | | |
|---|---|---|
| IN RE J.I.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF S.T.R., MOTHER | : | |
| | : | No. 1310 MDA 2014 |
| | : | |

Appeal from the Order entered July 11, 2014
in the Court of Common Pleas of Berks County
Orphans' Court Division, at No. 83404

| | | |
|---|---|---|
| IN RE L.M.A.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF S.T.R., MOTHER | : | |
| | : | No. 1310 MDA 2014 |
| | : | |

Appeal from the Order entered July 11, 2014
in the Court of Common Pleas of Berks County
Orphans' Court Division, at No. 83405

| | | |
|---|---|---|
| IN RE JA'S.T.-H.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF S.T.R., MOTHER | : | |
| | : | No. 1310 MDA 2014 |
| | : | |

J-S71016-14

Appeal from the Order entered July 11, 2014
in the Court of Common Pleas of Berks County
Orphans' Court Division, at No. 83406

| | | |
|---|---|---|
| IN RE J.J.R.-M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF S.T.R., MOTHER | : | |
| | : | No. 1310 MDA 2014 |
| | : | |

Appeal from the Order entered July 11, 2014
in the Court of Common Pleas of Berks County
Orphans' Court Division, at No. 83407

| | | |
|---|---|---|
| IN RE SA'M.ZE'S.-G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF S.T.R., MOTHER | : | |
| | : | No. 1310 MDA 2014 |
| | : | |

Appeal from the Order entered July 11, 2014
in the Court of Common Pleas of Berks County
Orphans' Court Division, at No. 83408

| | | |
|---|---|---|
| IN RE A.R.R.-G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF S.T.R., MOTHER | : | |
| | : | No. 1310 MDA 2014 |
| | : | |

Appeal from the Order entered July 11, 2014
in the Court of Common Pleas of Berks County
Orphans' Court Division, at No. 83409

BEFORE: FORD ELLIOTT, P.J.E., PANELLA, AND FITZGERALD[*], JJ.

MEMORANDUM BY PANELLA, J.                    **FILED JANUARY 06, 2015**

_____

[*]  Former Justice specially assigned to Superior Court.

S.T.R. (Mother) appeals from the orders of the Court of Common Pleas of Berks County, entered on July 11, 2014, that terminated her parental rights to her seven children: D.A.G., born in April 2003; J.I.G., born in July 2004; L.M.A.G., born in July 2005; JA'S.T.-H.G., born in March 2007; J.J.R.-M., born in April 2008; SA'M.ZE'S.G., born in May 2011; and A.R.R.-G., born in July 2012. There is an abundance of evidence necessitating the termination of Mother's parental rights.[1] What makes this a case of note is a procedural irregularity: counsel for Mother filed just one notice of appeal from the seven orders, each entered at its own docket number, terminating her parental rights. As explained below, we hold that the unique circumstances of *this* case did not necessitate the filing of multiple notices of appeal.

We begin by addressing the procedural irregularity. When Mother's attorney filed the appeal here, he filed one notice of appeal for all seven of the trial court's orders terminating Mother's parental rights. Upon receipt of this filing, this Court issued an order directing Mother's attorney to show cause why this appeal should not be quashed for acting contrary to the *Note*

---

[1] The trial court also terminated the parental rights of the fathers and unknown or putative fathers of the Children. None of them filed an appeal of those terminations.

to Rule 341 of the Pennsylvania Rules of Appellate Procedure, regarding final orders. Mother's attorney filed a timely response.[2]

The filing of one notice of appeal from orders entered at different docket numbers "has long been discouraged." 20 G. Ronald Darlington, et al., Pennsylvania Appellate Practice § 341:3.102 (2013-2014 ed.) (footnote omitted). This policy is set forth in the *Note* to Rule 341, which states that "[w]here, however, one or more orders resolve issues arising on more than

---

[2] Mother's attorney answered the following in response to our order:

> 1. The above captioned matters were heard by the Court of Common Pleas at one hearing;
>
> 2. The Honorable Court issued one Opinion for all the children, attached as Exhibit 1;
>
> 3. There is only one appellant who is the mother of all seven children;
>
> 4. The appeal of all seven orders was treated the same as was done by the lower court;
>
> 5. The appeal has merit as set forth in the Docketing Statement, section F2, attached as Exhibit 2;
>
> 6. [Mother] should not suffer due to an error made by her court appointed counsel;
>
> 7. [Mother's counsel] has filed a single appeal and Docketing Statement for multiple children in other cases involving termination of parental rights and never been informed that it was error to do so;
>
> 8. It is in the interest of judicial economy that these matters be treated as a single unified appeal.

Mother's Brief, at I-II (located between pages 2 and 3).

one docket or relating to more than one judgment, separate notices of appeal must be filed." Pa.R.A.P., 341 *Note*.

Courts, however, have not automatically quashed such appeals. For instance, our Supreme Court considered this question in ***General Electric Credit Corp. v. Aetna Casualty & Surety Co.***, 263 A.2d 448 (Pa. 1970), where the appellant filed a single appeal from two separate judgments entered against it. Upon considering these facts, our Supreme Court stated:

> Taking one appeal from several judgments is not acceptable practice and is discouraged. It has been held that a single appeal is incapable of bringing on for review more than one final order, judgment or decree. When circumstances have permitted, however, we have refrained from quashing the whole appeal, but this Court has quashed such appeals where no meaningful choice could be made.

***Id***. at 452-453 (internal citations and footnotes omitted).

Similarly, this Court, citing ***General Electric Credit Corp.***, declined to quash where counsel for appellants filed only one notice of appeal from separate orders denying each appellant's motion to intervene. ***See Egenrieder v. Ohio Casualty Group***, 581 A.2d 937, 940 n.3 (Pa. Super. 1990). The panel noted that counsel should have filed a separate notice of appeal for each appellant and that the appeals would then have been subject to consolidation. ***See id***. ***But see Commonwealth v. C.M.K.***, 932 A.2d 111 (Pa. Super. 2007) (court quashing single notice of appeal by criminal co-defendants who were tried jointly but sentenced individually).

Thus, the filing of one notice of appeal is "discouraged," but both our Supreme Court and this Court have refrained from quashing an appeal where "circumstances have permitted." Our examination of the procedural posture of this case leads us to the conclusion that the circumstances here permit us to exercise discretion and permit these appeals.

The circumstances we consider here are easily discernable from the record. The trial court issued all seven of the orders based on its consideration of one set of facts that applied equally to all the children. The orders are identical, differing from each other only in that they contain separate docket numbers and the names of the individual children. Mother's attorney, in his questions presented, has raised two issues that apply equally to all seven orders. The disposition of those two questions will dispose of all seven appeals.

If Mother's attorney had filed seven separate appeals, this Court would likely have consolidated them pursuant to Rule 513 of the Pennsylvania Rules of Appellate Procedure that provides that this Court, "in its discretion," may consolidate cases to be argued together where, "the same question is involved in two or more appeals in different cases." Pa.R.A.P. 513. That is clearly the case here.

We will not quash Mother's appeal, but, in the interest of judicial economy, will accept it. Additionally, the circumstances of Mother's appeal are not unique. In many cases in which trial courts have considered and will

consider the termination of parental rights, there are two or more children affected by the termination. Therefore, we will forward this decision to the Appellate Rules Committee to consider whether a single notice of appeal is sufficient in a termination of parental rights case, where a parent's rights to more than one child have been affected, where the orders terminating those rights are identical and are based on a common set of facts, and where the issues raised on appeal apply equally to each underlying order. We now proceed to the merits.

Berks County Children and Youth Services (BCCYS) filed their petitions to terminate Mother's parental rights on October 21, 2013. The trial court held a hearing on those petitions on June 16, 2014. Testifying at that hearing, in addition to Mother, were BCCYS caseworker, Brynn Jackowski, and former Signature Family Services caseworker, Kimberly Talbot.

The record supports the trial court's recounting of the facts of this case.

> [BCCYS] has been involved with [Mother] since approximately 2003, when agency involvement was necessary to facilitate [Mother's] adequate care of her then minor siblings. BCCYS became involved with [Mother] regarding her own biological children in 2012, when the agency received the first of a number of incidents which - over the course of the agency's investigations - ranged from abuse and neglect to prostitution. By July of 2013, and as a result of the volume of reports, BCCYS' lengthy involvement, and the ineffectiveness of in-home services, seven of [Mother's] eight children were adjudicated dependent and removed from [her] care. BCCYS testified that one of the primary obstacles regarding [Mother's] case is [Mother's] repeated history of non-cooperation with BCCYS. Most recently, and perhaps most notably, [Mother's] refusal to

cooperate became apparent in May of 2014 when she concealed her identity in order to prevent BCCYS' knowledge of the birth of her eighth child, and avoid the inevitable removal of the child from her care. As a result, not only was the child removed, but [Mother] was subsequently criminally charged in the matter. Further, [Mother] has a well-documented history of noncompliance with Court ordered treatments and hearing dates with regard to her children's active cases. [Mother] has failed to appear for at least 2 of her previous 3 court dates regarding [the Children], in November 19, 2013 and April 1, 2014, respectively. [Mother] has also failed to comply with BCCYS' mandated treatment programs and [c]ourt-ordered drug testing.

[BCCYS] presented evidence that indicated that [Mother] has a history of repeated, consistent, and continued incapacity [to parent] due to drug use, intermittent incarcerations, and a consistent lack of stable housing, which have led the [C]hildren to be deprived of essential care and caused them to be placed in foster care. BCCYS indicated that [Mother] has been intermittently incarcerated, and is currently being held in Berks County Prison awaiting the final disposition of a pending criminal charge. On cross-examination, [Mother] admitted to using illegal narcotics, including smoking marijuana while pregnant with her last child.

Perhaps the most probative evidence presented by BCCYS was in regards to [Mother's] lack of contact with the [C]hildren and failure to comply with [c]ourt and BCCYS reunification mandates. BCCYS presented evidence indicating that [Mother] has not seen [the Children] since September of 2013, nor has she pursued any avenues for reunification. [Mother] indicates that her failure to visit or contact the [C]hildren was a result of her belief that her parental rights had already been terminated. [Mother] attributed this belief to statements made to her regarding her Signature Services caseworker by one Kimberly Talbot. [Mother's] attorney was made aware of this potential witness mere minutes prior to the hearing. Despite the exigency, [Mother's attorney], through painstaking efforts, was able to secure Ms. Talbot's testimony for the [c]ourt. Unfortunately for [Mother], Ms. Talbot's testimony proved unfruitful as she had no recollection of any interaction with [Mother] regarding any misdeeds by her Signature Services caseworker. Even more damning to [Mother's] contention that she believed that her rights had been terminated was her failure

to appear at three hearings between September of 2013 and June of 2014 regarding her parental rights and [the Children] despite being served with notice and being afforded the opportunity to appear. Rather, it is abundantly apparent to the [c]ourt that, from September of 2013 through May of 2014, [Mother] had no contact with [the Children] as she was attempting to conceal her pregnancy from BCCYS. The [c]ourt's conclusion is supported by [Mother's] own admissions that at the time of the youngest child's birth in May of 2014, she utilized a false identity to attempt to conceal the birth from BCCYS, so that the child would not be placed ín BCCYS' custody.

Finally, in addition to [Mother's] failure to appear for necessary court proceedings and attempted clandestine birth, BCCYS presented evidence indicating to the court that [Mother] has failed to accomplish the necessary goals for reunification with [the Children], particularly required drug screenings, acquisition of stable housing and income, completion of domestic violence courses, and required mental health evaluations. [Mother] failed to accomplish these objectives despite knowing that they were required to reestablish a bond with [the Children].

Trial Court Opinion, 7/11/14, at 1-3 (unpaginated).

The trial court issued its orders terminating Mother's parental rights on July 11, 2014. The trial court authored an opinion in this matter in which it failed to address the question of the best interests and welfare of the Children pursuant to 23 Pa.C.S.A. § 2511(b). Mother timely filed her notice of appeal and statement of errors complained of on appeal. The trial court then entered an amended opinion on August 20, 2014, in which it corrected its error and addressed subsection (b). Mother did not file any response to the trial court's amended opinion.

Mother raises the following questions on appeal.

1. Did the [trial court] err by terminating [Mother's] parental rights?

2. Did the Honorable [c]ourt err in and abuse its discretion by not properly considering the evidence of a bond between [Mother] and [the Children] and failed to engage in the required second part of the analysis pursuant to 23 Pa. C. S. § 2511(b)?

Mother's Brief, at 6.

Our standard and scope of review are as follows.

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (internal citations omitted).

Further, we have stated that

[w]here the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

- 11 -

A party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard that requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004) (citation omitted). Further,

> [a] parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (internal citations omitted).

To terminate parental rights pursuant to section 2511(a)(1), the person or agency seeking termination must demonstrate through clear and convincing evidence that, for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrated a settled purpose to relinquish parental rights or that the parent has refused or failed to perform parental duties. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

With respect to subsection 2511(a)(1), our Supreme Court has held that

> [o]nce the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the

court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M., II*, 708 A.2d 88, 92 (Pa. 1988) (citation omitted). Further,

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B., N.M.*, 856 A.2d 847, 854-855 (Pa. Super. 2004) (internal citations omitted).

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. *See In re K.K.R.-S*., 958 A.2d 529, 533 (Pa. Super. 2008).

In support of her claim that the trial court erred in terminating her parental rights, Mother asks us to reexamine the evidence presented and

reach a different conclusion from that reached by the trial court. This we may not do. The trial court is the final arbiter of the credibility of witnesses and of the weight given to evidence. *See In re M.G.*, *supra*. Our examination of the record here reveals that competent evidence supports the trial court's findings and conclusions, and that the trial court did not err in terminating Mother's parental rights pursuant to section 2511(a)(1). Mother's first claim of error is without merit.

Mother's second claim of error is that the trial court failed to consider the best interests and welfare of the Children pursuant to 23 Pa.C.S.A. § 2511(b). After Mother filed her brief containing this claim, the trial court entered an amended opinion in which it engaged in a full analysis pursuant to subsection (b). We quote that analysis here, with approval:

> Finally, pursuant to 23 Pa.C.S.A. 2511(b), the [c]ourt has considered and placed considerable weight on the developmental, physical and emotional needs and welfare of the [C]hildren. The [c]ourt found that [Mother's] failure to provide the [C]hildren with basic medical care, consistent exposure of the [C]hildren to grave physical abuse, and neglect of their physical well-being directly and profoundly impedes the [C]hildren's physical, psychological, and academic development. Further, and perhaps most profoundly, the [c]ourt found that the maintenance of a prolonged, unhealthy attempt to re-establish a bond between [Mother] and the [C]hildren would only serve to amplify the damage already caused to the [C]hildren's emotional wellbeing by [Mother's] lack of involvement in their lives. The [c]ourt reached this conclusion based primarily on [Mother's] failure to have any contact with the [C]hildren since September of 2013, despite being afforded every opportunity to do so. In fact, even up until her last visit with the [C]hildren, [Mother] failed to appear for 16 of her 34 scheduled visitations. Based on the foregoing lack of contact, the [c]ourt was satisfied that there was no evidence lending the slightest indication that a parental

bond between [Mother] and the [C]hildren still exists, and that any attempt to re-establish a connection after such utter abandonment would in all likelihood be far more detrimental to the [C]hildren's emotional well-being than the final severance of [Mother's] parental rights. The [c]ourt's determination in this case falls squarely in line with Superior Court's ruling in ***In re K.Z.S.***, 946 A2d 753 (Pa. Super. 2008). In the ***K.Z.S.*** case, the Superior Court held that "in termination cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." [946 A.2d at 762-63]. As such, based on the foregoing authority and the lack of evidence regarding [Mother's] bond, the [c]ourt found that under 23 Pa.C.S.A. §2511(b), the developmental, physical, emotional and overall welfare of the children will be best served by the termination of [Mother's] parental rights.

Trial Court Amended Opinion, 8/20/14, at 3 (unpaginated). Mother did not respond to the trial court's amended opinion. Mother's second claim of error is without merit.

Our review of the record reveals that the trial court's decision to terminate Mother's parental rights under section 2511(a)(1) and (b), and to permit the Children's adoption without notice to or consent from Mother is supported by clear and convincing evidence. Accordingly, we find that there was no abuse of the trial court's discretion.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/6/2015

- 15 -