J-A09017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: R.N., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| IN THE INTEREST OF: F.N., A MINOR, | |
| APPEAL OF: LUZERNE COUNTY CHILDREN AND YOUTH SERVICES | No. 1725 MDA 2016 |

Appeal from the Order Entered September 16, 2016
In the Court of Common Pleas of Luzerne County
Civil Division at No(s): CP-40-DP-0000012-2013, CP-40-DP-0000013-2013

BEFORE: SHOGAN, OTT, and STABILE, JJ.

MEMORANDUM BY SHOGAN, J.:                     **FILED JUNE 05, 2017**

Appellant, Luzerne County Children and Youth Services ("CYS"), purports to appeal from two orders entered on September 16, 2016, regarding the assignment of a caseworker to underlying dependency actions. After careful review, we are constrained to quash this appeal.

The trial court summarized the troubling factual and procedural history of this matter as follows:

> On January 9, 2013, after [a] hearing addressing the Dependency Petition filed by Luzerne County Children and Youth Services (Children and Youth) the court, by clear and convincing evidence, found the minor children, R.N. and F.N., to be dependent children pursuant to the Juvenile Act. This case involves an appeal taken by Children and Youth pursuant to an Order entered by the [c]ourt dated September 12, 2016 (docketed on September 16, 2016) which ordered that a Hazleton caseworker, rather than a Wilkes-Barre caseworker, shall be assigned to the case. The case was to be supervised from the Wilkes-Barre Office since there were no supervisors available in the Hazleton office.

There are two minor children in this case, R.N. and F.N. R.N. is six (6) years old, born [in December of 2009], and F.N. is (10) years old[,] born [in July of 2006]. The natural mother, K.N. [("Mother")] had three (3) children and one of them is deceased.

On December 23, 2014, [Mother] filed a Petition for Emergency Special Relief requesting that Luzerne County Children and Youth and the Guardian Ad Litem for the children have no further involvement in the case and that the matter be referred to Children & Youth's regional headquarters. Alternatively, the Mother requested that the Dependency [proceeding] be dismissed and discontinued and the minor children [be] returned to [Mother]. [Mother] averred in her Petition that the Guardian Ad Litem had referred the matter involving the deceased child to a personal injury attorney in order to file a wrongful death action. Mother also averred that the Guardian Ad Litem did not disclose her actions concerning her referral to the [c]ourt, Master, other attorneys or parties involved.

[Mother] also averred that one of the caseworkers from Children and Youth also referred the wrongful death action to a personal injury lawyer without disclosing her actions concerning the referral to the [c]ourt, Master, other attorneys or parties involved. Mother further alleged that the caseworker and/or the Guardian Ad Litem provided confidential medical records of the deceased minor child to a personal injury attorney without the consent, knowledge or approval of [Mother] and without disclosing that information to the [c]ourt, Master, Attorneys or parties involved. [Mother] alleged that the Guardian Ad Litem could not hold a neutral position in this case and that her actions presented a conflict of interest and further presented an appearance of impropriety. [Mother] further alleged in her Petition that a wrongful death action was filed and that an Administrator of the Estate was appointed which excluded [Mother].

On December 30, 2014, Children and Youth filed Preliminary Objections to [Mother's] Petition for Special Relief. On January 6, 2015[,] an agreement was reached among [Mother], the Guardian Ad Litem of the minor children[,] and Children and Youth. [Mother] agreed to withdraw her Petition for Special Relief without prejudice in which she requested that

- 2 -

the assigned Children and Youth personnel and the Guardian Ad Litem be removed from the case. The Guardian Ad Litem agreed to withdraw as the Guardian Ad Litem for the two children without admission of any wrongdoing or liability. Thus, a new Guardian Ad Litem was appointed for the minor children, R.N. and F.N.

Luzerne County Children and Youth agreed to transfer the case files to its office in Hazleton, Pennsylvania. It was agreed that these files were to be handled by caseworkers, supervisors and investigators who had no involvement with this case. More specifically, Luzerne County Children and Youth agreed to immediately transfer the file of the two minor children to the Hazleton office for assignment to a new caseworker. Melissa Rogers of the Wilkes-Barre Office was the only individual permitted to meet with the Hazleton caseworker to provide the case history and transfer of the file. After that initial meeting, Ms. Rogers was not to have any further communication with any Wilkes-Barre staff regarding the dependency actions of the minor children. Furthermore, no other Wilkes-Barre caseworker or staff member was to have any contact regarding the case with the Hazleton caseworker.[1]

There was also a pending Petition for Contempt against Children and Youth filed by [Mother] alleging that Melissa Rogers and her supervisor, Donna Domiano, interfered with reunification between [Mother] and her children by contacting Cornerstone Counseling and advising that agency not to engage in reunification services despite a [c]ourt Order which directed Cornerstone Counseling to conduct therapeutic sessions between Mother and the children. On September 9, 2016, Children and Youth filed a Petition to Modify the existing Order relating to the above-referenced caseworker and supervisor assignments. As indicated, *supra*., [sic] said Order was entered upon agreement of all the parties. The basis of the petition was to advise the court that the assigned caseworker in the Hazleton office had left her position and the only remaining employee working on the case was the supervisor from the Hazleton office. However, at

_____

[1] The terms of this agreement were placed on the record and entered as an order by the trial court during the January 6, 2015 hearing. N.T., 1/6/15, at 1-28.

the hearing, the court learned that the supervisor was also leaving her position. Thus, a new caseworker and supervisor would need to be assigned to the family. At the hearing, the [c]ourt held that since there were no more supervisors available at the Hazleton office, a supervisor from the Wilkes-Barre office may be assigned as long as the supervisor had no connection to the case or presented no appearance of impropriety. Furthermore, the [c]ourt ordered that one of the Wilkes-Barre supervisors, Jeanette Rosenau, who is the fiancée of one of the caseworkers that originally worked on the case, would not be permitted to be the supervisor for the Hazleton caseworker.

On October 17, 2016, Children and Youth filed an Appeal to the Superior Court [from] the Order[s]. . . .

Trial Court Opinion, 12/20/16, at 1-4 (internal citations omitted).

CYS presents the following issue for our review:

Whether the Trial Court erred because it did not have jurisdiction to order how Luzerne County Children and Youth Services should allocate administrative resources pursuant to a dependency case governed by the Juvenile Act, 42 Pa.C.S. § 6301, *et seq.*?

CYS's Brief at 1.

Before turning to the merits of CYS's argument, we must determine if we may exercise jurisdiction over this appeal. Initially, we acknowledge that issues of jurisdiction may be raised *sua sponte*. **In re W.H.**, 25 A.3d 330, 334 (Pa. Super. 2011). Moreover, "[w]hether an order is appealable as a collateral order is a question of law; as such, our standard of review is *de novo* and our scope of review is plenary." **Rae v. Pennsylvania Funeral Directors Association**, 977 A.2d 1121, 1126 n.8 (Pa. 2009).

First, of relevance is the fact that the September 16, 2016 orders issued by the trial court were separate decisions for each child and were filed

- 4 -

on separate dockets. Orders, 9/16/16, at 1. Pennsylvania Rule of Appellate Procedure 341 requires that where one or more orders resolves issues arising on more than one docket or relating to more than one judgment, an appellant must file separate notices of appeal from each order or judgment. *See* Pa.R.A.P. 341, note (citing ***Commonwealth v. C.M.K.***, 932 A.2d 111 (Pa. Super. 2007)) (quashing joint notice of appeal filed by co-defendants from separate judgments of sentence entered on different dockets). Furthermore, in the civil context, the question of one appeal from multiple orders has been specifically disapproved of by courts of this Commonwealth. ***See General Electric Credit Corp. v. Aetna Casualty & Surety Co.***, 263 A.2d 448, 452–453 (Pa. 1970) (holding that one appeal from several judgments is discouraged as unacceptable practice and stating that the Supreme Court has quashed such appeals where no meaningful choice between them could be made); ***Egenrieder v. Ohio Casualty Group***, 581 A.2d 937, 940 (Pa. Super. 1990) (holding separate appeals were required to be filed by each appellant where trial court entered separate orders denying each appellant's motion on different grounds). Here, CYS filed only one notice of appeal from the two separate orders that were entered on separate dockets. Thus, quashal on this basis is appropriate.

Second, CYS has filed an appeal from an interlocutory order. While CYS asserts that it is appealing a collateral order, we cannot agree.

> Generally, only appeals from final orders are eligible for appellate review. . . . The collateral order rule "permits an

appeal as of right from a non-final order if it is separable from and collateral to the main action, involves a right too important to be denied review and, if the review is postponed, the right will be irreparably lost." The collateral order rule, codified at Pa.R.A.P. 313, must be interpreted narrowly. All three elements must be satisfied to permit review of an interlocutory appeal under the collateral order rule.

*Jacksonian v. Temple University Health System Foundation*, 862 A.2d 1275, 1279 (Pa. Super. 2004) (internal citations omitted).

"In order to satisfy the second prong of the collateral order doctrine, it is not sufficient that the issue be important to the particular parties." *Spanier v. Freeh*, 95 A.3d 342, 346 (Pa. Super. 2014). "Rather, the issue must involve rights deeply rooted in public policy going beyond the particular litigation at hand." *Id.*

Additionally, we have described the third element for qualification as a collateral order as follows:

The third of these requires the appellant to demonstrate that the underlying claim will be "irreparably lost" should the appellant be forced to forebear from appealing until after final judgment in the litigation. To satisfy this element, an issue must actually be lost if review is postponed. Orders that make a trial inconvenient for one party or introduce potential inefficiencies, including post-trial appeals of orders and subsequent retrials, are not considered as irreparably lost.

*Graziani v. Randolph*, 856 A.2d 1212, 1225 (Pa. Super. 2004) (internal citations and some quotation marks omitted).

In support of its claim that the September 16, 2016 orders are collateral orders, CYS contends first that the orders are separate from the main cause of action in the dependency case. CYS's Brief at 4-5. Second,

CYS maintains that the right involved is too important to be denied review because "[w]ithout review, the [t]rial [c]ourt can continue to order the Agency how to handle [sic] administrative decisions even though it has no statutory authority." *Id.* at 5. Finally, CYS argues that the question before the Court will be irreparably lost if review is postponed because "the decision as to which caseworker would be working with this family would never be reviewable." *Id.*

We agree that the first prong has been met: the order regarding assignment of the caseworker is separate from the main, underlying dependency action. We cannot agree, however, that the second and third prongs required for a collateral order have been satisfied.

With regard to the second prong, as outlined, CYS asserts that the right involved is too important to be denied review because without review, the trial court can continue to handle administrative decisions though it has no statutory authority to do so. We first note that the parties came to the initial agreement to prohibit staff from the Wilkes-Barre office from working on Mother's case in January of 2015. N.T., 1/6/15, at 1-14, 27-28. At that point, it was agreed to by all interested parties, including CYS, that staff in the Hazleton office would handle the matter. *Id.* As a result of this agreement, Mother agreed to withdraw her petition for emergency special relief. *Id.* at 8. CYS did not challenge the trial court's authority to enter the order reflecting that agreement at that time. N.T., 1/6/15, at 10, 27-28.

CYS is now asking for a change in the *status quo* that was put into effect by the order reflecting that agreement. Thus, we cannot agree with CYS's assertion that the court is continuing to "handle" administrative decisions without authority. By agreement, the parties allowed the trial court to manage this deemed "administrative decision." CYS did not object to or appeal from that order when it was entered. Accordingly, the trial court's authority to designate a caseworker in this matter was conceded by all parties, including CYS. Moreover, while the issue may be important to CYS in this particular case, we cannot agree that it involves rights deeply rooted in public policy going beyond this particular litigation where the parties agreed to the trial court's authority in directing the administrative handling of this matter. ***Spanier***, 95 A.3d at 346. Accordingly, the second prong is not met.

Furthermore, the third prong of the collateral order test has not been met. Notably, CYS does not make an argument or assert facts relating to the importance of a particular caseworker being with this family. Rather, it argues that the trial court's decision hinders CYS's ability to effectively allocate resources, thereby placing a heavy burden on CYS, and if review of this issue is postponed, the claim will be irreparably lost. CYS's Brief at 4, 7. We find this argument unconvincing for several reasons.

First, CYS's focus appears to be on the allocation of resources. Regardless of which office supervises this case, the allocation of resources

will be within Luzerne County CYS. As a result, we cannot agree that a designation of which office will supervise this case places a "heavy burden" on CYS, nor that the postponement of review will result in the claim being irreparably lost. Arguably the designation of a Hazleton caseworker and Wilkes-Barre supervisor in this matter may result in some inconvenience or inefficiency for CYS. Those factors, however, are insufficient to meet the criteria for the third prong. *Graziani*, 856 A.2d at 1225. Moreover, if it were subsequently determined that the caseworker who worked with this family was inappropriate, and that impacted the dependency determination for example, then that issue could be addressed on appeal. Accordingly, the third element for a collateral order has not been established, and the current appeal lies from an interlocutory order. Thus, we are constrained to quash this appeal.

Appeal quashed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/5/2017</u>