**C. Russell JOHNSON and Anita D. Johnson, Husband and Wife**

**v.**

**TELE–MEDIA COMPANY OF McKEAN COUNTY, and its Successors and Assigns, Raymond Kleisath, Alberta Kleisath and Teri Spittler.**

**Appeal of Raymond Kleisath, Alberta Kleisath and Teri Spittler.**

Superior Court of Pennsylvania.

Submitted Nov. 4, 2013.

Filed April 24, 2014.

David B. Ross, Assistant District Attorney, Coudesport, for appellants.

D. Bruce Cahilly, Coudesport, for appellees.

BEFORE: BOWES, J., ALLEN, J., and LAZARUS, J.

OPINION BY LAZARUS, J.:

Raymond Kleisath, Alberta Kleisath and Teri Spittler ("Intervenors") appeal from the judgment entered in the Court of Common Pleas of McKean County on June 18, 2013. After careful review, we affirm.

By deed dated May 4, 1984 Terry Palmer, d/b/a Davis Cablevision, conveyed to Tele–Media Company of McKean County ("Tele–Media") a parcel of land located at the intersection of East and Main Streets in the Borough of Smethport, McKean County ("Property"). Subsequently, by quitclaim deed dated January 17, 2012, Comcast of Colorado/Pennsylvania/West Virginia, LLC ("Comcast") conveyed the Property to C. Russell Johnson and Anita D. Johnson, husband and wife ("Johnsons"). Comcast claims to be a successor in title to Tele–Media by virtue of merger, liquidation or acquisition, although there are no recorded conveyances of the Property from Tele–Media to Comcast. Both aforementioned deeds contained exception and reservation clauses granting right-of-way and sewer easements over a portion of the Property to J.L. Wirt and Cora A. Wirt and their heirs and assigns.

On January 2, 2013, the Johnsons filed a complaint to quiet title to the Property as to Tele–Media. Thereafter, Intervenors

filed a petition to intervene in the quiet title action, alleging an interest in the Property "inasmuch as they are the heirs and assigns of Joseph L. and Cora A. Wirt referenced in said Deed and inasmuch as they have maintained the subject property over the years." Amended Petition to Intervene, 4/17/13, at ¶ 3. They also averred that they have "used the property openly, continuously, notoriously, adversely and exclusively." *Id.* at ¶ 5. Intervenors also filed preliminary objections to the Johnsons' complaint.

On March 12, 2013, the Johnsons filed a motion for order of court and decree *nisi* seeking entry of judgment against Tele–Media for failing to respond to their quiet title complaint. In response to a motion filed by Intervenors, by order dated March 19, 2013, the trial court stayed the proceedings pending disposition of the petition to intervene. A hearing on the Intervenors' petition was held on April 17, 2013. On April 26, 2013, the trial court entered orders dismissing Intervenors' petition and granting the Johnsons' action to quiet title.

Intervenors filed a timely notice of appeal of the April 26, 2013 orders on May 16, 2013. Subsequently, on June 24, 2013, Intervenors filed a second notice of appeal after final judgment was entered. By order dated July 10, 2013, this Court dismissed the first appeal and ordered that all issues raised in that appeal would be addressed in the instant appeal.

■ Preliminarily, the Johnsons have filed a motion to quash this appeal, asserting that the order denying intervention does not constitute a Final Order as defined under Pa.R.A.P. 341 and, therefore, is not appealable. They also assert that Intervenors lack standing to appeal, "since they are not parties to the litigation nor would their legal interest[s] be jeopardized through a denial of this appeal." Motion to Quash, 8/19/13, at 7. Here, however, judgment has been entered. Moreover, Intervenors have been aggrieved by the denial of their petition to intervene. *See* Pa.R.A.P. 501 ("[A]ny party who is aggrieved by an appealable order ... may appeal therefrom."). Accordingly, the appeal is proper.

Intervenors raise the following issues for our review:

1. Whether the [trial court] erred when it refused to allow [Intervenors] to [i]ntervene in an [a]ction to [q]uiet [t]itle when the record below clearly indicated [Intervenors] had an interest in the land that would be affected by a judicial determination of ownership, when [Intervenors'] interest in part of the land was expressed in deeds of record, when the [p]etition to [i]ntervene demonstrated that [Intervenors] claimed additional interests in the land by adverse possession, when no other party had filed and [a]nswer and [Intervenors'] interest[s] were not protected, and when the [Intervenors] sought to file preliminary objections to the [c]omplaint to [q]uiet [t]itle, which was improperly plead[?]

2. Whether the [trial court] incorrectly shifted the burden of proof to Intervenors when it conducted the hearing on [i]ntervention and when it treated such hearing as a final trial on the merits rather than limiting its inquiry to the statutory factors for intervention[?]

Brief of Appellants, at 5.

■ Whether to allow intervention is a matter vested in the discretion of the trial court and the court's decision will not be disturbed on appeal absent a manifest abuse of its discretion. *Stenger v. Lehigh Valley Hosp. Center,* 554 A.2d 954, 956 (Pa.Super.1989). A trial court will not be found to have abused its discretion unless the record discloses that its decision was

manifestly unreasonable or was the result of partiality, prejudice, bias, or ill-will. *Id.*

Pennsylvania Rule of Civil Procedure 2327 governs who may intervene in a civil action and provides, in relevant part, as follows:

Rule 2327. Who May Intervene

At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if

. . .

(3) such person could have joined as an original party in the action or could have been joined therein; or

(4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action.

Pa.R.C.P. 2327. In addition, Pa.R.C.P. 2329 provides, in relevant part, as follows:

Rule 2329. Action of Court on Petition

Upon the filing of the petition and after hearing, of which due notice shall be given to all parties, the court, if the allegations of the petition have been established and are found to be sufficient, shall enter an order allowing intervention; but an application for intervention may be refused, if

(1) the claim or defense of the petitioner is not in subordination to and in recognition of the propriety of the action; or

(2) the interest of the petitioner is already adequately represented[.]

Pa.R.C.P. 2329.

Intervenors first assert that the trial court improperly dismissed their petition because: (1) their existing interest in the land in question would be affected by the judicial determination of ownership; (2) they claimed additional interests in the land by adverse possession; and (3) their interests were not adequately protected, as no other party filed an answer and judgment was granted by default. The trial court concluded that Intervenors' current interests in the right of way and sewer easement were adequately protected because the Johnsons acknowledged the easements and would take title subject thereto. As to the Intervenors' claim of adverse possession, the court concluded that Intervenors' evidence that they mowed the lawn and traversed parts of the property not included in their easement failed to establish an interest in the entire parcel via adverse possession.

 First, it is readily apparent from the record that Intervenors' current interest in the land, comprised of right-of-way and sewerage easements, is not jeopardized by the Johnsons' quiet title action. In fact, in their answer to the petition to intervene, the Johnsons concede that their "title to the premises is subject to those right-of-way claims and easements of J.L. Wirt and Cora A. Wirt and that the [Johnsons] are not attempting to divest those interests through this action to quiet title." Answer to Petition to Intervene, 2/19/13, at ¶ 5. Accordingly, the trial court did not err in refusing intervention based upon Intervenors' status as easement-holders.

 Intervenors also claim an ownership interest in the Property, and corresponding right to intervene, under the doctrine of adverse possession. One who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years. *Baylor v. Soska,* 540 Pa. 435, 658 A.2d 743, 744 (1995), citing *Conneaut Lake Park, Inc. v. Klingensmith,* 362 Pa. 592, 66 A.2d 828 (1949). Each of these elements must exist; otherwise, the possession will not confer

title. *Smith v. Peterman,* 263 Pa.Super. 155, 397 A.2d 793, 796 (1978).

A sporadic use of land, by one without title to it, will not operate to give him a title, no matter how often repeated[.] It is true that residence is not necessary to make an adverse possession within the statute of limitation; the possession may be adverse by enclosing and cultivating the land; but nothing short of an actual possession, permanently continued, will take away from the owner the possession which the law attaches to the legal title; temporary acts on the land, without an intention to seat and occupy it for residence and cultivation or other permanent use consistent with the nature of the property, are not the actual possession required[.] Such occupation must be exclusive, and of such a character as compels the real owner to take notice of the possession of the disseisor[.]

*Parks v. Pennsylvania R. Co.,* 301 Pa. 475, 152 A. 682, 684 (1934) (internal citations omitted). In other words, "only acts signifying permanent occupation of the land and done continuously for a twenty-one year period will confer adverse possession." *Smith, supra.* The burden of proving adverse possession rests upon the claimant by credible, clear and definitive proof. *Stevenson v. Stein,* 412 Pa. 478, 195 A.2d 268, 270 (1963).

Here, the testimony presented by Intervenors did not demonstrate that their occupation of the property was either exclusive or continuous as required under the law. Intervenor Raymond Kleisath testified as follows on direct examination:

Q: Now, with regard to [the Property], have you and/or family members ever maintained or done anything on that property?

A: Well, we've mowed it off and on and I run a brush hog up and down the line on it one thing or another. And the back part of it, Mr. Russell [Johnson], I would say he cleaned it, he parked up on where the judge said that there was parking, he has parked up there for several years, but the bottom part of it where the right-of-way was, we have maintained the bottom part of it off and on for years.

N.T. Hearing, 4/17/13, at 9.

On cross-examination, Kleisath testified as follows:

Q: Now, you suggested that you know Mr. Johnson, he maintained the upper portion of this lot?

A: Basically, yeah, because he parked his car there.

*Id.* at 12–13.

Kleisath's testimony clearly demonstrates that both the Intervenors and the Johnsons occupied, used and/or maintained the Property at various points. As such, Intervenors cannot prove that they maintained actual, distinct and exclusive possession of the Property. While the possession necessary to establish adverse possession "need not be absolutely exclusive," *Lyons v. Andrews,* 226 Pa.Super. 351, 313 A.2d 313, 316 (1973), we find the occasional mowing of a portion of the Property's lawn to be entirely insufficient to establish title by adverse possession. Kleisath's description of the Intervenors' "off and on" activities on the Property did not establish a "permanent use consistent with the nature of the property" such as would "compel[ ] the real owner to take notice of the possession" of the Intervenors, but rather a sporadic use inconsistent with the degree of intent necessary to establish adverse possession. *Parks, supra.*

Finally, Intervenors offered no evidence as to the other elements of adverse possession—visible, notorious, and hostile possession. Accordingly, even if they had estab-

lished exclusivity and continuity, they would not prevail. *Peterman, supra.*

▆▆▆▆ Intervenors next assert that the trial court improperly allocated to them the burden of proof at the hearing on intervention. When faced with a request for intervention, a trial court must first determine whether the petitioner comes within one of the classes of persons entitled to intervene pursuant to Rule 2327. *Egenrieder v. Ohio Casualty Grp.*, 399 Pa.Super. 86, 581 A.2d 937, 942 (1990). It is the petitioner's burden to show that all the requirements of Rule 2327 are met. *Id.* at 943.

> Once a petitioner seeking intervention presents a *prima facie* case for intervention, there is no requirement that he prove his case before intervention will be permitted, since otherwise he would be forced to try his case twice.

*Id.*, citing Standard Pennsylvania Practice 2d, § 14:250, at 412. However, this does not mean that the court must grant intervention based solely upon unproven factual allegations; petitioner must present some quantum of evidence tending to establish the underlying substantive claim. *See id.* ("the 'prima facie' case ... is not extended to the court's acceptance of unproven factual allegations when determining the merit of petitions under Rule 2327").

▆▆▆ In light of the foregoing, it is clear that a hearing on a petition to intervene must be conducted as something akin to a "mini-trial" on the merits of petitioners' claim. In this case, petitioners based their Rule 2327 claim on two alleged "legally enforceable interests": their interests as easement holders and their claim to fee simple title via adverse possession. While the easements are, in fact, legally enforceable interests, the trial court properly concluded that, under Rule 2329, those interests were adequately protected by virtue of the Johnsons' acknowledgement thereof.

Thus, the trial court was left to determine whether Intervenors had a colorable claim to adverse possession. In order to do so, the court properly placed the burden on Intervenors to present a *prima facie* case. *Egenrieder, supra.* As discussed above, the court rightly concluded that Intervenors did not demonstrate a legally recognizable interest in the Property based upon the doctrine of adverse possession. This claim is meritless.

The trial court properly denied the petition to intervene.

Judgment affirmed. Motion to quash denied.

BOWES, J., Files a Dissenting Opinion.

## DISSENTING OPINION BY BOWES, J.:

I agree with the learned majority that an intervenor need only meet a *prima facie* burden with regard to establishing his right to intervene. *See Wilson v. State Farm Mut. Auto. Ins. Co.*, 512 Pa. 486, 517 A.2d 944, 947 (1986). However, my review of the record reveals that Appellants did present a *prima facie* case that they obtained adverse possession over the lower portion of the parcel of land at issue. Hence, I respectfully dissent from the majority's decision to affirm the denial of their motion to intervene.

C. Russell and Anita D. Johnson (the "plaintiffs") instituted this quiet title action against Tele–Media Company of McKean County ("Tele–Media"), and alleged that they acquired title to a parcel of land containing about forty-five square rods by a January 17, 2012 quit-claim deed from Comcast of Colorado/Pennsylvania/West Virginia, LLC ("Comcast"). In the January 17, 2012 deed, Comcast claimed title through Tele–Media, but there were no conveyances of record in McKean County from Tele–Media to Comcast. The plain-

tiffs averred that Comcast acquired title to the real estate through mergers and/or acquisitions. The plaintiffs, in count two of the complaint, set forth, in the alternative, that they had acquired ownership of the real estate through adverse possession.

On February 1, 2013, Raymond Kleisath, Alberta Kleisath and Teri Spittler (the "intervenors") simultaneously filed a petition to intervene as defendants and preliminary objections to the complaint. In both documents, they alleged that they were necessary parties in that they were the direct descendants of J.L. and Cora A. Wirt, who had reserved interests in the real estate. The reserved rights included a right-of-way over the property for access to a garage and a right-of-way for purposes of utilizing the real estate as a sewer connection. They observed that their easement rights were evidenced in the plaintiffs' quit-claim deed from Comcast.

The intervenors additionally averred that they had "maintained the subject property over the years." Petition to Intervene, 2/1/13, at ¶ 3. In the preliminary objections, the intervenors set forth that the complaint was factually and legally insufficient to establish title either through the quitclaim deed, which was from a grantor without record title, or through adverse possession. In an amended petition to intervene, they claimed that they "used the property openly, continuously, notoriously, adversely, and exclusively," and that their maintenance included, "but [was] not limited to, mowing the property, filling in holes and ruts, and traversing the property on foot and by vehicle for a period in excess of twenty-one (21) years." Amended petition to intervene, 4/17/13, at ¶¶ 5, 3.

The court scheduled a hearing on the motion to intervene where the following was adduced. The parcel in question is a small, vacant piece of land abutting other property owned by the plaintiffs. The top portion of the parcel is a grassy area used by the plaintiffs to park cars. N.T. Hearing, 4/17/13, at 6. The bottom section of the real estate is where the intervenors' express easements were located. Mr. Kleisath, the sole witness at the hearing, testified as follows. The easement for access had been utilized to reach a garage that was built by Mr. Kleisath's great-grandfather. Mr. Kleisath described his family's use of the entire parcel of real estate as intermittent in that he said that they "mowed it off and on." *Id.* at 9. The witness acknowledged that the plaintiffs had cleaned brush from the top portion and parked cars on it "for several years." *Id.* Mr. Kleisath then related that, as to "the bottom part of it where the right-of-way that was, we have maintained the bottom part of it off and on for years." *Id.*

While this quotation would, at first glance, appear to indicate an intermittent use by Mr. Kleisath and his family as to the lower section of the real estate, a review of the entire transcript establishes the contrary. Specifically, Mr. Kleisath reported that the intervenors had provided the sole, exclusive, and constant maintenance on the bottom portion of the vacant lot for over a century. Mr. Kleisath testified that with respect to "the bottom portion of that property," he mowed it and "**everything else** down over the years." *Id.* at 10 (emphasis added). He explained that the years in question involved decades and that his activities included mowing the entire lower portion and repairing and restoring the surface of the easement for access as well as the area outside of that easement. *Id.* at 14. Mr. Kleisath also had used that section of the property to store equipment.

Mr. Kleisath admitted that he mowed the top portion only occasionally and that the plaintiffs began to maintain the top

portion once they purchased the land abutting it. Nevertheless, his testimony also excluded the possibility that the plaintiffs had performed any activities on the bottom portion of the vacant parcel, and his uncontradicted testimony proved that he and his family had done the activities necessary to maintain the bottom section of the real estate in excess of twenty-one years.

In an order dated April 25, 2013, the court denied the petition to intervene, found in favor of the plaintiffs in their quiet title action, and ruled that the plaintiffs owned the property in question. The court first noted that the intervenors' easements over the property for access and to maintain the sewage line were adequately protected by language in the quit-claim deed. It additionally ruled on the merits of the intervenors' adverse possession claim and decided that they had failed to prove their claim of ownership in the entire parcel through that means. Trial Court Opinion, 4/26/13, at 7–8.

Appellants appealed from the April 26, 2013 order and from the ensuing entry of judgment in this action in favor of the plaintiffs. The original appeal was dismissed by order dated July 10, 2013, wherein we stated that all issues raised in the first appeal would be addressed in the present appeal.

I agree with the intervenors' allegations that they have an interest in the land that will be affected by the judicial determination that plaintiffs own the entire parcel in question. Initially, I observe, "Although it is within the sound discretion of the trial court whether to grant intervention, a denial of intervention may be reversed where there has been manifest abuse of such discretion." *Pennsylvania Ass'n of Rural and Small Schools v. Casey*, 531 Pa. 439, 613 A.2d 1198, 1200 n. 3 (1992). Pa.R.C.P. 2327 provides in pertinent part that: "At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if ... the determination of such action **may** affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action." Pa.R.C.P. 2327(4) (emphasis added).

While I agree that the intervenors' interest as easement holders is protected by the language in the quit-claim deed, I observe that the intervenors did not make a claim for only those interests in the land. They also claimed ownership over the lower section by adverse possession. In my view, Mr. Kleisath's testimony at the hearing sufficiently established a *prima facie* case of adverse possession over the lower portion of the property in question to warrant intervention.

"One who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years. Each of these elements must exist; otherwise, the possession will not confer title." *Piston v. Hughes*, 62 A.3d 440, 443 (Pa.Super.2013) (citation omitted). "There is no precise definition of what constitutes possession of real property; the determination of possession is dependent upon the facts of each case, and to a large extent upon the character of the land in question. In general, however, actual possession of land means dominion over the property; it is not the equivalent of occupancy." *Moore v. Duran*, 455 Pa.Super. 124, 687 A.2d 822, 827 (1996) (citations omitted). In the case at bar, the land was a vacant lot, and it is evident from Mr. Kleisath's unrebutted testimony that his activities with respect to the lower portion of the land were sufficient to establish dominion as to that section since he stated that he did everything necessary to maintain it. Additionally, the maintenance in question

was not confined to the boundaries of the easement for access to the garage. Further, the trial court did not find Mr. Kleisath incredible. Rather, it concluded that his proof did not establish adverse possession over the entire portion of the property. While I agree with this conclusion, it ignores the fact that one can acquire title by adverse possession to a portion of property owned by another, as illustrated by our decision in *Brennan v. Manchester Crossings, Inc.,* 708 A.2d 815 (Pa.Super.1998).

In *Brennan,* the plaintiffs brought a quiet title action against the defendants, averring that they acquired title by adverse possession to a small parcel of land that was part of the defendants' larger acreage. The trial court concluded that the plaintiffs failed to prove their adverse possession cause of action, and we reversed. We held that the plaintiffs' uncontradicted proof established that they had, for over twenty-one years, actually, continuously, exclusively, visibly, notoriously, distinctly, and hostilely possessed the portion that they claimed. This holding was premised upon the plaintiffs' testimony that they maintained the land in question by mowing the grass, trimming trees and shrubbery, raking leaves, and occasionally parking cars on it. Additionally, no one else performed these activities on the part of the defendants' land claimed by the plaintiffs. We relied upon a prior case authority wherein similar types of activities were held sufficient to establish adverse possession over a parcel of land. *See Reed v. Wolyniec,* 323 Pa.Super. 550, 471 A.2d 80 (1983).

We indicated in *Brennan* that the plaintiffs' actions of maintaining the piece of defendants' land constituted actual possession. Intervenors' actions likewise constituted maintenance over the unoccupied parcel. As to the continuous and exclusive nature of the actions herein, *Brennan* also controls. We noted therein that, "The law does not require that the claimant remain continuously on the land and perform acts of ownership from day to day.... A temporary break or interruption, not of unreasonable duration, does not destroy the continuity of the adverse claimant's possession." *Brennan, supra* at 818–19. We further noted that "the claimant's possession need not be absolutely exclusive. Rather, it need only be a type of possession which would characterize an owner's use." *Id.* at 818. Thus, in the present matter, it is not important that maintenance did not occur each day. Given the nature of the parcel, the owner would have only performed the activities that the intervenors undertook. In my view, the elements of exclusivity and continuity were present herein.

Possession is considered visible and notorious when the "party without color of title" evidenced "conduct sufficient to place a reasonable person on notice that his or her land is being held by the claimant as his own." *Id.* Intervenors' actions were performed openly and were visible for any passerby to view. Hence, the visible and notorious aspects of adverse possession were established as a *prima facie* matter herein. *Id.*

Finally, the term "hostile," as an element of adverse possession "does not mean 'ill will' or 'hostility,' but implies an assertion of ownership rights adverse to that of the true owner and all others." *Id.* Additionally, "if all of the elements of adverse possession are established, the element of hostility is implied." *Id.* All of the other elements of adverse possession were established herein, and intervenors asserted ownership rights over the easement and surrounding area adverse to the true owner. Hence, the element of hostility was contained within Mr. Kleisath's testimony.

I believe that Mr. Kleisath set forth a *prima facie* case of adverse possession over the lower part of the land in question by conducting activities on it indistinguishable from those discussed in *Brennan*. His possession was exclusive since he stated that he and his family were the only people to maintain the bottom portion of property for decades. The activities in question—mowing, paving, repairing, and storage of equipment—were performed in public and thus, were, by definition, open, visible, and notorious. Given that no extant entity had title to the property, the intervenors could not have had permission from the title holder to conduct their actions. Hence, the element of hostility was established through the proof in question.

Thus, the intervenors established, as mandated by Pa.R.C.P. 2327(4), that the action herein "may affect [a] legally enforceable interest" that they have in the parcel "whether or not [they] may be bound by a judgment in the action." (Pa. R.C.P. 2327(4)). We have ruled, "The phrase legally enforceable interest has been interpreted to require that the applicant for intervention own an interest in or a lien upon property in question or own a cause of action which will be affected by the action." *Marion Power Shovel Co., Division of Dresser Industries, Inc. v. Fort Pitt Steel Casting Co., Division of Conval–Penn, Inc.*, 285 Pa.Super. 45, 426 A.2d 696, 700 (1981) (citation and quotation marks omitted). Herein, the applicants for intervention presented a *prima facie* case that they own a cause of action, *i.e.*, an adverse possession claim to part of the property, that will be affected by this action. They do not merely own easements that were protected by the deed to the Plaintiffs. Thus, the court was required to grant them intervention. *Id.* ("a person not a party thereto **shall** be permitted to intervene") (emphasis added). The determination herein, which granted the plaintiffs title to the real estate, undoubtedly affects a legally enforceable interest that the intervenors have asserted in the subject matter of this quiet title action.

The purpose of the intervention hearing was to establish, as a preliminary matter, that the intervenors might have a legally enforceable interest in the entire parcel at issue. The trial court, in concluding that intervention was unnecessary, appeared to decide the merits of the adverse possession claim. Nevertheless, through the intervenors' single witness, the intervenors presented testimony that they had consistently maintained their right-of-way and the area surrounding the right-of-way, in contravention to the allegations in plaintiffs' complaint that they maintained the entire parcel.

After what was supposed to be a hearing to establish, preliminarily, that they **might** have a legally protectable claim of adverse possession, the trial court ruled, on the merits, that they failed to establish title by adverse possession. Since the hearing in question was not designed to address the merits of the adverse possession claim, the trial court manifestly abused its discretion. The intervenors presented *prima facie* proof to refute the plaintiffs' adverse possession cause of action by eliciting sufficient evidence that they might have an adverse possession claim over their right-of-way and the land surrounding it. In my view, their motion to intervene should have been granted and they are entitled to a trial on the merits, and to bring in other witnesses regarding the extent of their activities on the lower portion of the parcel in question.

I am aware that the trial court also stated that the intervenors could bring an ejectment action. However, as the intervenors observe, the burden of proof would shift in such a setting since they would be

plaintiffs with that burden, whereas, in the present lawsuit, the plaintiffs bear the burden of establishing that they own the real estate.