J-A14036-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BINGHAM COURT HOMEOWNERS ASSOCIATION | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 2577 EDA 2024 |
| TERESA M. WARD AND EDWIN Y. CHEN | : | |

Appeal from the Judgment Entered November 18, 2024
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 211201812

BEFORE: PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED NOVEMBER 12, 2025**

Bingham Court Homeowners Association ("BCHOA") appeals from the judgment entered by praecipe[1] following a three-day bench trial that resulted in a defense verdict in favor of Teresa M. Ward and Edwin Y. Chen (collectively, "Appellees"). BCHOA claims that it demonstrated its right to ownership over a parcel of land in Philadelphia's Society Hill neighborhood through the mutually exclusive legal doctrines of adverse possession and consentable lines. After a thorough review of the record, we affirm.

The trial court summarized the facts of this case as follows:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** Pa.R.Civ.P. 227.4(2).

[BCHOA] initiated this lawsuit on or about December 27, 2021. On February 14, 2022, [BCHOA] filed its [s]econd [a]mended [c]omplaint claiming[, *inter alia*, its right to a:] declaratory judgment to quiet title to a disputed parcel under the legal doctrine[] of adverse possession . . . against [Appellees]. This action arises from a dispute over the ownership and control of a 14' by 49'7" portion of St. James Way (hereinafter, "Parcel") immediately abutting [Appellees'] residence at 1 Bells Court, Philadelphia, Pennsylvania 19106.

On or about May 7, 1969, Philadelphia's City Council passed Ordinance No. 654, striking the Parcel from the City Plan. [Appellees'] predecessor in title, Basil S. Walsh III (hereinafter, ["Basil"]), owned 1 Bells Court but primarily resided in rural Pennsylvania. [Appellees] aver that the [o]rdinance allowed the Parcel to automatically revert to [Basil] by operation of law by virtue of the custom of automatic reversion of city streets to abutting property owners. In 1969, [Basil] entered a written agreement with the City of Philadelphia (hereinafter, "City"), in which the City "fully approved the striking of the [P]arcel and its transfer to [Basil]." However, [Basil] did not file and record a consolidation deed for the combined lots. During his lifetime, [Basil] transferred 1 Bells Court to his wife [Marria] Walsh, who later sold the property to [Appellees] in 2017.

As of August 15, 1972, [BCHOA], the homeowner's association, sporadically maintained the Parcel, even though the houses in Bells Court were not part of the homeowner's association. Multiple neighbors of 1 Bells Court also testified to occasionally doing garden work on the Parcel. [BCHOA], the homeowner association, and neighbors who are not members of the homeowner association occasionally maintained the [P]arcel by:

- Installing a light post and paying for its electricity[;]
- Removing weeds and debris[;]
- Performing perennial care and mulching[;]
- Planting annuals[; and]
- Jointly paying with Bells Court residents to erect and maintain a fence[.]

[BCHOA] argued that its maintenance of the Parcel entitled it to ownership by way of adverse possession prior to [Appellees'] purchase of their property in 2017.

[Appellees] reside at 1 Bells Court by virtue of a deed dated July 31, 2017. Around June of 2018, . . . [Ward] contacted City officials to obtain a permit and officially consolidate the Parcel with her property. [Ward] then obtained a consolidation survey [that] was approved and prepared by the 2nd District of the City Survey Department. The Philadelphia Planning Commission stamped the consolidation plan as approved. [] Ward then obtained a lot consolidation [z]oning [p]ermit that was approved by the City Department of Licenses and Inspections.

On or about January of 2019, [BCHOA] filed an appeal to the Philadelphia Zoning Board of Adjustment (hereinafter, "ZBA"). The appeal disputed the legality of the [Appellees' z]oning [p]ermit and made a claim for ownership of the Parcel. The ZBA scheduled a hearing for May 21, 2019, which was continued by agreement of the parties. However, no final hearing was ever scheduled by [BCHOA], and [BCHOA] did not pursue the appeal further. On April 15, 2020, [] Ward filed and recorded a consolidation deed that completed the merger of the Parcel with her property. Thereafter, [BCHOA] commenced this action on or about December 27, 2021.

. . . On June 5, 2023, [BCHOA attempted to amend its complaint by adding a claim pursuant to the doctrine of consentable lines. However, the court later denied its motion to amend.]

A three-day bench trial was held from June 24, 2024, though June 26, 2024. After the bench trial, [the trial c]ourt issued its August 1, 2024[ o]rder[] finding in favor of [the Appellees] as to ownership and control of the Parcel. Thereafter, [BCHOA] filed its [m]otion for [p]ost-[t]rial [r]elief in the form of a judgment notwithstanding the verdict or a modification and/or reversal of [the trial c]ourt's August 1, 2024[ o]rder. [The court ultimately denied BCHOA's post-trial motion, and BCHOA thereafter appealed. The court did not direct BCHOA to file a statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).]

Trial Court Opinion, 11/6/24, at 1-4 (record citations and footnotes omitted).

As judgment had not yet been entered following the denial of BCHOA's post-trial motion, this Court directed BCHOA to praecipe the trial court prothonotary to enter judgment. BCHOA complied, and judgment was

entered, thus perfecting this Court's jurisdiction. *See, e.g.*, *Morgan v. Millstone Res. Ltd.*, 267 A.3d 1235, 1238 n.1 (Pa. Super. 2021) (establishing that we may entertain appeals after a final judgment has been docketed, notwithstanding an earlier, premature filing date of the notice of appeal) (citation omitted).

BCHOA presents two issues for our review:

1. Did the trial court err in denying BCHOA's claim to the Parcel under a theory of adverse possession, where it exercised dominion and control of it for nearly forty-six years by extensively landscaping, maintaining, and lighting it without any objection from Basil and Marria Walsh (collectively, the "Walshes"), who were rarely seen at [1] Bells Court and never seen in the Parcel?

2. Did the trial court err in denying BCHOA's claim to the Parcel under the doctrine of consentable lines where two tall fences and the side wall of 1 Bells Court separated the true owners from the [P]arcel, who acquiesced that the fences and walls established the boundary line for BCHOA's ownership of the Parcel?

*See* Appellant's Brief at 2.

For bench trials, we employ the following standard of review:

[We are] limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

*Hart v. Arnold*, 884 A.2d 316, 330-31 (Pa. Super. 2005) (citations omitted). We emphasize that the court's findings predicated on the credibility of witnesses are binding on appeal, unless it appears that the court abused its discretion, reached conclusions wholly lacking in evidentiary support, or capriciously disbelieved the evidence. *See id.*

BCHOA first contends that it demonstrated, after "a three-day, bench trial, in which ten witnesses testified (totaling over 700 pages of testimony and hundreds of pages of exhibits)[,]" Appellant's Brief at 21, its entitlement to the Parcel under the legal doctrine of adverse possession.

Adverse possession, while extraordinary, permits one to achieve ownership of another's property by operation of law. *See Bezjak v. Diamond*, 135 A.3d 623, 627 (Pa. Super. 2016). To obtain title via this mechanism, a claimant must prove actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for a statutorily required period of twenty-one years. *See Shaffer v. O'Toole*, 964 A.2d 420, 423 (Pa. Super. 2009); *see also* 68 P.S. § 81 (establishing twenty-one-year timeframe). All seven elements must exist; otherwise, the possession will not confer title. *See Shaffer*, 964 A.2d at 423. The claimant has the burden of proving adverse possession and must establish its right thereto by credible, clear, and definitive proof. *See Johnson v. Tele-Media Co. of McKean County*, 90 A.3d 736, 741 (Pa. Super. 2014).

Here, in reaching its conclusion that BCHOA had not adversely possessed the Parcel, the trial court performed a two-step analysis. It first

- 5 -

ruled that decades ago, notwithstanding his lack of recordation, Basil, as the adjacent property owner at 1 Bells Court, acquired title to the Parcel. 1 Bells Court was later transferred to his wife, Marria, yet the Parcel remained unrecorded. Several years later, Marria, in selling 1 Bells Court, "passed" her then-unrecorded right to the Parcel to Appellees. Nevertheless, the Appellees "perfected" title to the Parcel in a recorded consolidation deed in 2020, joining 1 Bells Court with the Parcel. After that, the court found that BCHOA failed to meet multiple elements necessary for adverse possession.

The court began by quoting Section 3 of the Act of February 27, 1849, P.L. 90, which states that:

> Whenever any highway, street, court, or alley, shall be vacated, or hath been vacated, by authority of law, the adjoining owner or owners shall be authorized to reclaim the same, to the centre thereof, unless the ground was originally taken in unequal proportions from the then[-]owners thereof, and in such case, the adjoining owners shall reclaim, in the proportion contributed by such owners, or by those under whom they shall have derived their titles.

36 P.S. § 2131. The court also cited Section 1 of the Act of May 23, 1907, P.L. 223, in which the court emphasized the language of the section concerning the lawfulness of a party's recordation of a deed for publicly-owned property thereafter vacated:

> Whenever the municipal authorities of any municipality of this commonwealth have vacated, or shall hereafter vacate, by ordinance, any public street, lane, or alley, or part thereof, *it shall be lawful* for the person or persons who shall become the owner or owners of such vacated street, lane, or alley, or part thereof, by operation of law or otherwise, to record a certified copy of such ordinance in the recorder's office of the proper county, and the

- 6 -

recorder shall index the same as a conveyance from such municipality to such owner or owners.

53 P.S. § 1941 (emphasis added). The trial court then analyzed the necessity of a recording to establish ownership and found that this latter statute is

silent as to whether a recording [a deed pursuant to] the ordinance *is required* for the property interest to pass to the abutting property owner. It can only be assumed, due to the permissive rather than mandatory language of the statute, that the recordation is not a compulsory requirement for ownership to be perfected. Because [BCHOA] did not claim adverse possession prior to the perfected claim of [the Appellees'] ownership of the Parcel, [BCHOA's] legal claim fails.

On May 7, 1969, Philadelphia's City Council passed Ordinance No. 654, striking the Parcel from the city plan. [Appellees'] predecessor in title, [Basil], confirmed that the Parcel automatically reverted to him by written agreement with the City []. However, [Basil] never recorded a consolidated deed. [Appellees] purchased the[ir] property in 2017 without notice of [BCHOA's] putative ownership interest in the Parcel.

In 2018, [Appellees] were informed by a City Plans Unit officer that the Parcel had automatically reverted to [the Appellees'] property, and [they] could claim it by formal deed, provided they acquired a zoning permit and survey. [Appellees] then followed the proper procedures to begin the process of recording a consolidation deed. It was only after filing the [z]oning [p]ermit that [BCHOA] asserted [its] interest in the Parcel by filing an appeal to the ZBA. However, having agreed to a continuance, [BCHOA] never pursued the appeal. [Appellees] filed and recorded a consolidation deed on April 15, 2020.

After the deed was consolidated, [BCHOA] filed this suit to quiet title of the Parcel[. Nevertheless, Appellees] are the current and only recorded owners of the Parcel by way of formal deed.

Trial Court Opinion, 11/6/24, at 5-6 (record citations and footnotes omitted; emphasis in original).

Next, the court found that BCHOA did not meet the requisite elements to establish adverse possession of the Parcel, as follows:

> The claimant must use the land as [its] own, consistent with the land's nature. [**See**] **Parks v. Pennsylvania R. Co.**, 152 A. 682, 684 (Pa. 1930). Activities on real property such as maintaining a strip of lawn; cultivating land; enclosing property by fence; entering land; clearing trees; and making improvements to the land may establish adverse possession. [**See Glenn v.**] **Shuey**, 595 A.2d 606, 611 (Pa. Super. 1991).
>
> [Our Supreme] Court has held that sporadic use of land is insufficient for establishing adverse possession:
>
>> A sporadic use of land, by one without title to it, will not operate to give him a title, no matter how often repeated[.] It is true that residence is not necessary to make an adverse possession within the statute of limitation; the possession may be adverse by enclosing and cultivating the land; but nothing short of an actual possession, permanently continued, will take away from the owner of the possession which the law attaches to the legal title; temporary acts on the land, without an intention to seat and occupy it for residence and cultivation or other permanent use consistent with the nature of the property, are not the actual possession required[.] Such occupation must be exclusive, and of such a character as compels the real owner to take notice of the possession of the disseisor.
>
> **Parks**[], 152 A. [at] 684 [] (internal citations omitted). "[O]nly acts signifying permanent occupation of the land and done continuously for a twenty-one year period will confer adverse possession." **Smith v. Peterman**, 397 A.2d 793, 796 (Pa. Super. 1978).
>
> In **Edmonson** [**v. Dolinich**, 453 A.2d 611 (Pa. Super. 1982)], [this Court] held that a claimant could not establish adverse possession of an alleyway abutting each neighbor's property because the claimant's acts were sporadic. These sporadic acts, insufficient to establish adverse possession of the alleyway[,] include:
>
> - Maintaining the alleyway by cleaning up grass and debris[;]

- Using the alleyway for storage[;]

- Erecting fences that did not fully enclose the alley[; and]

- [P]lanting [] a peach tree and rhubarb patch[.]

[*See*] *Edmondson*, 453 A.2d at 612[, 614 n.2].

Exclusive possession is "a prerequisite to perfecting title by adverse possession." *Henry v. Grove*, 52 A.2d 451, 451 (Pa. 1947). "An adverse possessor must intend to hold the land for himself, and that intention must be made manifest by his act[. . . .] He must keep his flag flying and present a hostile front to all adverse pretensions." *Rec. Land Corp. v. Hartzfeld*, 947 A.2d 771, 775 (Pa. Super. 2008) (quoting *Flannery v. Stump*, 786 A.2d 255[, 259-60] (Pa. Super. 2001)).

In this case, [BCHOA] failed to prove that it had actual, exclusive, [and] hostile possession of the Parcel. [BCHOA] failed to use the land as its own, as [BCHOA] allowed neighbors to enter the Parcel. [BCHOA's] use of the Parcel was not exclusive, as decisions on maintaining the Parcel were made collectively by residents of Bells Court and [BCHOA]. Prior to making any changes to the Parcel, [BCHOA] would request permission from neighbors and would comply with each neighbor's requests. Furthermore, [BCHOA] failed to exclude [Basil] from the Parcel as, although he did not primarily reside in 1 Bells Court, witness testimony confirms that [Basil] ha[d] been [there] about five times, during which [BCHOA] did not exclude him from accessing the Parcel.

[BCHOA's] maintenance of the Parcel was sporadic, and therefore, insufficient for establishing adverse possession. According to multiple testimonies, the neighbors would occasionally garden in the Parcel. Furthermore, as in [*Edmondson*], the erected fences did not fully enclose the Parcel, as members of the public could freely move through the Parcel. Presently, [Appellees] have not been excluded from the Parcel nor was there evidence on the record that [Appellees] should have been placed on notice of [BCHOA's] occupation of the Parcel.

Trial Court Opinion, 11/6/24, at 7-9 (record citations omitted; some brackets added).

BCHOA first asserts that the trial court's "factual findings are contrary to the trial testimony and other record evidence." Appellant's Brief at 23. In particular, BCHOA challenges the court's "factfinding," characterizations of those facts, and conclusions drawn therefrom, as it pertained to: (1) a light stanchion that was found by the court to have been jointly placed on the Parcel by BCHOA and Bells Court residents, when in fact, it had been unilaterally erected and maintained by BCHOA; (2) the court's finding that BCHOA went years without performing any activities on the Parcel, when the relevant testimony established that BCHOA had landscapers perform work on the Parcel once a year, which BCHOA describes as "likely understating" the work, due to observational issues; (3) snow removal, which the court relied upon to find that there was work performed on the Parcel by Bells Court neighbors, when those neighbors were simply removing snow pursuant to their easement walking path through the Parcel; and (4) the court's finding that Marria was more frequently present at Bells Court than Basil, where the testimony conversely demonstrated her perpetual absenteeism. *See* Appellant's Brief at 23-25 (record citations omitted).

In BCHOA's own words, the court, in rejecting its adverse possession claim, found that it "did not establish the hostile, exclusive, and actual elements of possession," *id.* at 25, all of which are necessary.[2]

Initially, we note this Court has qualified the exclusivity element for establishing adverse possession as follows:

> The possession adequate to establish adverse possession need not be absolutely exclusive; it need only be of a type of possession which would characterize an owner's use. Thus, the exclusive character of appellees' possession was not destroyed because other persons occasionally passed unobserved over the lot. It was enough that appellees' possession was to the general exclusion of others and that they remonstrated with persons who attempted, without permission, to use the land.

*Reed v. Wolyniec*, 471 A.2d 80, 84 (Pa. Super. 1983) (internal citations and quotation marks omitted).

BCHOA maintains that it exerted "exclusive" possession over the Parcel and refutes the court's determinations that: (1) it requested permission from

_____

[2] BCHOA's brief contains argument that, in effect, challenges the validity of Ward's 2020 consolidation of 1 Bells Court and the Parcel onto the same deed. *See* Appellant's Brief at 39-44. BCHOA claims that Ward's "merger" of the two properties by deed was improper because of, *inter alia*, the disputed and ambiguous nature of the Parcel, and the history of its initial receipt by Basil and subsequent conveyance (or lack thereof). *See* Appellant's Reply Brief at 10-11 (BCHOA declaring that Basil's estate, rather than the Appellees, are the true owners of the Parcel and that, therefore, Appellees "lack standing" to contest BCHOA's adverse possession claim). Nevertheless, BCHOA maintains that it had a "prior perfected claim to the [P]arcel[, which] takes legal precedence because [Ward's] deed was recorded long after the 21-year period in which BCHOA established title by adverse possession[.]" Appellant's Brief at 44. As we find the trial court correctly determined that BCHOA failed to demonstrate adverse possession, we need not reach these other claims.

Bells Court residents before gardening and complied with those residents' requests; (2) the Parcel was open to the public and Bells Court residents; and (3) Basil (and future owners of 1 Bells Court) was never prevented access to the Parcel. *See* Appellant's Brief at 26. Specifically, first, BCHOA highlights that, although Bells Court neighbors were notified, as a mere courtesy, of landscaping activities authorized by BCHOA, they were not permitted a vote on those matters and BCHOA did not request any permission for the same. *See id.* at 26-28 (quoting Bingham Court residents Bernice J. Koplin and Daniel Kelley, who were or are current BCHOA officers). Moreover, BCHOA maintains that some Parcel planting requests made to BCHOA by Bells Court residents were denied by BCHOA, with at least some of the Bells Court neighbors believing the Parcel to be owned by BCHOA. *See id.* at 28-29. Second, BCHOA avers that the Parcel was not open to the public, and contends that, although the public was free to walk adjacent to the Parcel on various neighborhood walkways, there was testimony that the Parcel was "private property and the public has no legal right *to climb over the fence* and trespass *into* the [P]arcel." *Id.* at 31 (citing Koplin's testimony) (emphasis in original). BCHOA maintains that, when a surrounding fence was installed in 1983, it had the resultant effect of discouraging people from walking on the Parcel. *See id.* at 32-33 (citing more of Koplin's testimony, with further inclusion of her statement indicating that signs were not put up because the fence sufficiently prohibited ingress onto the Parcel). As to Basil's relationship with the Parcel,

BCHOA asserts that the critical issue is "whether he was seen in the [P]arcel or exercised control of it or told BCHOA to stay away from it." *Id.* at 33. BCHOA notes that there is nothing of record establishing Basil was ever present on the Parcel. *See id.* at 34 (stating, further, that neighbors never saw Basil perform maintenance on the Parcel).

On the element of hostility, BCHOA summarily contends that it "exercised dominion and control for more than 46 years by lighting, landscaping, and maintaining the disputed [P]arcel. It is undisputed that Basil, Marria, and Ward did not eject BCHOA within [a] 21-year period [of time] and therefore the hostility element is satisfied." *Id.* at 36 (record citation and footnote omitted).

Regarding the "actual" element of adverse possession, BCHOA concedes that it needed to demonstrate "dominion over the land[.]" *Id.* (citing *Shuey*, 595 A.2d at 611). Nevertheless, BCHOA argues that, because "[t]he [P]arcel consists of two small gardens and an easement entryway[,]" it established actual dominion where it performed "the activities an owner would normally perform on a garden, including lighting it, landscaping it[,] and maintaining it. BCHOA performed these garden activities for more than 46 years[.]" *Id.*

After our review, although we recognize BCHOA expended time and effort in the Parcel's upkeep, in viewing the evidence in the light most favorable to Appellees as verdict winners, we conclude that the trial court did not abuse its discretion or commit an error of law in determining that BCHOA

failed to meet all of the elements necessary for establishing its adverse possession of the Parcel. We emphasize that "only acts signifying *permanent occupation* of the land and done continuously for a twenty-one[-]year period will confer adverse possession." **Smith**, 397 A.2d at 796 (emphasis added). We also reiterate that an adverse possessor "must intend to hold the land *for himself*[.]" **Shuey**, 595 A.2d at 610 (emphasis added).[3] In **Tele-Media Co. of McKean County**, this Court held that joint occupation, use, and maintenance of a property, at various points, defeats an adverse possession-based claim of "actual, distinct[,] and exclusive possession[.]" 90 A.3d at 741. Although exclusivity need not be absolute, "occasional mowing of a portion of the [subject property is] entirely insufficient to establish title by adverse possession." **Id.** In short, "off and on" activities do not establish a permanent use that is consistent with the nature of the property. **Id.**

Here, Daniel Kelley, president of BCHOA from 2006 to 2022, testified

---

[3] We acknowledge that **Shuey** was abrogated in part by **Zeglin v. Gahagen**, 812 A.2d 558 (Pa. 2002). Nevertheless, the portions of **Shuey** germane to the present matter are unaffected by **Zeglin**, which held that

> tacking is permitted [for claims brought under a theory of acquiescence in a boundary] upon sufficient and credible proof of delivery of possession of land not within (but contiguous to) property described by deed of conveyance, which was previously claimed and occupied by the grantor and is taken by the grantee as successor in such interest.

**Zeglin**, 812 A.2d at 566.

that Carol Hutelmyer, a resident of Bells Court, planted on the gardens within the Parcel for many years during the relevant period. **See** N.T. Bench Trial, 6/24/24, at 36, 132. Hutelmyer was not a resident of Bingham Court, and Kelley, in his "capacity as president [of BCHOA] did not stop her from planting within the disputed area[.]" **Id.** at 133; **see also** N.T. Bench Trial, 6/26/24, at 157-58 (Hutelmyer confirming that she was never "prevented from walking[,] working[,] or planting within the" Parcel).[4] Hutelmyer was observed, by at least one other Bells Court neighbor—Paul Boni—as she was "cleaning, maint[aining], [and] planting within the [Parcel.]" **Id.** at 117.[5]

As background and insight into BCHOA's decision-making process for work it deemed necessary on the Parcel, Kelley indicated that if he "thought the homeowners [of Bells Court] would be interested in [that work], [BCHOA] would ask them and/or [if BCHOA] did something and they didn't like it, . . . perhaps [BCHOA] took it out." N.T. Bench Trial, 6/24/24, at 156-57. BCHOA would keep Bells Court residents' interests in mind "because it was in front of

_____

[4] Hutelmyer also indicated that she, as a resident of Bells Court, paid, in part, for the iron fence on the Parcel, in conjunction with BCHOA. **See** N.T. Bench Trial, 6/26/24, at 163-64. She thereafter performed maintenance on that fence, "repaint[ing] it once or twice[.]" **Id.** at 182.

[5] Boni stated that he and Hutelmyer performed work on the Parcel by "agreement or understanding" with BCHOA. **See** N.T. Bench Trial, 6/26/24, at 121. Boni further testified that he thought BCHOA "was not doing enough and was not making [the Parcel] as beautiful as [he and Hutelmyer] though it could be . . . [they were] going to jump in and plant things[.]" **Id.**

their house." *Id.* at 157. Nevertheless, Kelley confirmed that Hutelmyer would complain to BCHOA about its lack of maintenance on the Parcel. *See id.* at 158-59.[6] When it came to, for example, a proposed 2008 "Garden Plan" for the Parcel, Kelley verified that BCHOA would "field objections" from Bells Court homeowners and "honor those objections . . . [t]o the extent [BCHOA] felt they were reasonable objections[; BCHOA] would honor them, yes." *Id.* at 163. The "honoring" system, however, went both ways. *See* N.T. Bench Trial, 6/26/24, at 143 (Boni testifying that if Kelley voiced his objection to planting plans for the Parcel, he "would have honored his objection[]").

Regarding access to the Parcel, testimony revealed that the Parcel contained "multiple openings in the iron fence . . . for someone to be able to access the disputed area[.]" N.T. Bench Trial, 6/25/24, at 173; *see also* N.T. Bench Trial, 6/24/24, at 130 (Kelley indicating that the walkway across the disputed area is unobstructed and has never been blocked by BCHOA); N.T. Bench Trial, 6/25/24, at 142 (Bingham Court homeowner Marian McGee testifying that BCHOA would "never prevent anybody, any people either from Bells Court or the general public from walking through the disputed [P]arcel"

_____

[6] Hutelmyer believed that the 1 Bells Court owner was the Parcel's true owner. *See* N.T. Bench Trial, 6/26/24, at 183. Notwithstanding her belief, she did not know whether BCHOA had an obligation to "clean up" the Parcel. *See id.* at 176. Despite her uncertainty, she complained to BCHOA regarding the Parcel having "little to no maintenance[.]" *Id.* at 174. Landscapers from BCHOA were seen "once a year" to "blow out the leaves" on the Parcel. *Id.* at 144.

and that she would "rarely see [people] go in there[]"). Boni testified that no one is "prevented from walking in and about" the Parcel. N.T. Bench Trial, 6/26/24, at 123. Ward testified that, upon visiting 1 Bells Court for the first time in 2017, she observed no barriers, other than the low iron fence, preventing her from walking through the Parcel, and there were not any "no trespassing" signs. *Id.* at 184-85.

As the failure to demonstrate any one element of adverse possession is sufficient to defeat such a claim, *see Shaffer*, *supra*, we address the element of exclusivity herein. Simply put, on this record, it was not an abuse of discretion for the trial court to find that BCHOA did not meet the exclusivity element because it was not holding the Parcel *for itself*. **See Shuey**, *supra*. As previously stated, BCHOA's use of the Parcel did not prevent others' known access and use of the same; its failure to prevent the presence on the Parcel of Bells Court residents for their own uses and projects, in effect allowing for, at least at times, those residents' unilateral or generally unfettered use for gardening and other maintenance purposes necessarily defeats its claim to having adversely possessed the Parcel. Regardless of how BCHOA frames its own decision-making process for the Parcel use prior to its undertaking of any maintenance or upkeep,[7] BCHOA was clearly not acting in a way that excluded

_____

[7] As stated, above, BCHOA contends that Bells Court residents did not have a vote on projects it undertook, nor did BCHOA request permission prior to performing any work. **See** Appellant's Brief at 27. Nevertheless, it appears
*(Footnote Continued Next Page)*

others from accessing and using the Parcel for those others' own purposes, e.g., Bells Court residents' recurrent gardening. **See Reed**, **supra** (possession must be demonstrated to the general exclusion of others). Moreover, Hutelmyer's complaints as to BCHOA's lack of maintenance provide further evidence that it was not acting as a possessor of land, consistent with its characteristics, to the exclusion of others. **See** N.T. Bench Trial, 6/24/24, at 158-59; N.T. Bench Trial, 6/26/24, at 174-76. As BCHOA has failed to prove the exclusivity element of adverse possession, it is due no relief on this issue.[8]

In its second claim, BCHOA avers that the court erred by denying its requested amendment to its complaint to include a count alleging a cause of action under the doctrine of consentable lines. **See** Appellant's Brief at 45-46. Distilled down, BCHOA argues that because a tall iron fence separates the Parcel from 1 Bells Court and, further, given BCHOA's activities in the Parcel for more than twenty-one years, there was "acquiescence" as to the definitive boundary between these two properties. **See id.**

Preliminarily, we note that BCHOA has not discussed this Court's

_____

that the relationship between BCHOA and the Bells Court residents was a two-way street, symbiotic in nature.

[8] To the extent that BCHOA additionally asserts that its acts on the Parcel were more frequent than sporadic, we separately note that Hutelmyer's repeated complaining as to the lack of maintenance being performed on the Parcel during the years BCHOA claims to have adversely possessed the Parcel supports the trial court's determination that BCHOA did not exert control over the Parcel as an actual owner of that land.

standard of review for situations, such as this, where the trial court denied its

motion to amend its complaint. Nevertheless, in such cases, and for this claim,

we employ the following standard of review:

> Our standard of review of a trial court's order denying a plaintiff leave to amend its complaint . . . permits us to overturn the order only if the trial court erred as a matter of law or abused its discretion. The trial court enjoys broad discretion to grant or deny a petition to amend. Although the court generally should exercise its discretion to permit amendment, where a party will be unable to state a claim on which relief could be granted, leave to amend should be denied.

***Pollock v. National Football League***, 171 A.3d 773, 778 (Pa. Super. 2017)

(citation omitted).

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or [the judgment is] the result of partiality, prejudice, bias[,] or ill-will, as shown by the evidence of record, discretion is abused. We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

***Debbs v. Chrysler Corp.***, 810 A.2d 137, 148 (Pa. Super. 2002) (citation

omitted).

Rule 1033 of the Pennsylvania Rules of Civil Procedure provides, in

relevant part:

> **(a) General Rule.** A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a

new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.

Pa.R.C.P. 1033(a).

The trial court, here, found that another judge had denied

[BCHOA's m]otion to [a]mend to add a claim to title of the Parcel under the [d]octrine of [c]onsentable [l]ines on June 29, 2023. To amend the complaint thereafter would contravene the law of the case doctrine which [Appellees] relied upon. Therefore, it is inappropriate to raise the issue again with a different judge.

Trial Court Opinion, 11/6/24, at 9 (record citation omitted).

As BCHOA failed to tailor its appellate argument regarding denial of its motion to amend through the standard of review as described in **Pollock**, we caution BCHOA that we could find waiver on that basis: "[w]hen defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." **Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007).

Nevertheless, "[t]he doctrine of consentable line[s] is a rule of repose for the purpose of quieting title and discouraging confusing and vexatious litigation." **Plauchak v. Boling**, 653 A.2d 671, 675 (Pa. Super. 1995) (citations omitted). It "has emerged as a separate and distinct theory from that of traditional adverse possession." **Niles v. Fall Creek Hunting Club, Inc.**, 545 A.2d 926, 930 (Pa. Super. 1988) (*en banc*). "There are actually two ways in which one may prove a consentable line: by dispute and compromise, or by recognition and acquiescence." **Id.**

In demonstrating a consentable line by dispute and compromise, one must show evidence of:

(1) a dispute with regard to the location of a common boundary line[;] (2) the establishment of a line in compromise of the dispute[;] and (3) "the consent of both parties to that line and the giving up of their respective claims which are inconsistent therewith." **Newton v. Smith**, 40 Pa.Super. 615, 616 (1909). "[W]here such a line has been clearly established and the parties on each side take possession or surrender possession already held up to that line, it becomes binding, under the application of the doctrine of estoppel." **Id.**

**Inn Le'Daerda, Inc. v. Davis**, 360 A.2d 209, 215 (Pa. Super. 1976).

For consentable lines by recognition and acquiescence, we have explained:

Acquiescence, in the context of a dispute over real property, denotes passive conduct on the part of the lawful owner consisting of failure on his part to assert his paramount rights or interests against the hostile claims of the adverse user. A determination of consentable line by acquiescence requires a finding 1) that each party has claimed the land on his side of the line as his own and 2) that he or she has occupied the land on his side of the line for a continuous period of 21 years. Significantly, because the finding of a consentable line depends upon possession rather than ownership, proof of the passage of sufficient time may be shown by tacking the current claimant's tenancy to that of his predecessor. To do so, however, the claimant must show sufficient and credible proof of delivery of possession of land not within (but contiguous to) property described by deed of conveyance, which was previously claimed and occupied by the grantor and is taken by the grantee as successor in such interest. When a consentable line is established, the land behind such a line becomes the property of each neighbor regardless of what the deed specifies. In essence, each neighbor gains marketable title to that land behind the line, some of which may not have been theirs under their deeds.

**Moore v. Moore**, 921 A.2d 1, 5 (Pa. Super. 2007) (cleaned up and citations

- 21 -

omitted); **see also Plauchak**, 653 A.2d at 676 (establishing that to prove a consentable line by recognition and acquiescence, "the parties need not have specifically consented to the location of the line[,]" but "[i]t must nevertheless appear for the requisite twenty-one years a line was recognized and acquiesced in as a boundary by adjoining landowners") (citations omitted).

"A consentable line by recognition and acquiescence is typically established by a fence, hedgerow, tree line, or some other physical boundary by which each party abides. However, the fence line need not be as substantial as that required for adverse possession." **Long Run Timber Co. v. Dept. of Conservation & Nat. Res.**, 145 A.3d 1217, 1234 (Pa. Commw. 2016) (citation omitted).

After our review of both BCHOA's brief and reply brief, we conclude that BCHOA has waived review of this issue for lack of development. **See** Pa.R.A.P. 2119(a), (b); **see also J.J. DeLuca Co., Inc. v. Toll Naval Assocs.**, 56 A.3d 402, 411 (Pa. Super. 2012) (finding waiver of appellate issues where appellant fails to develop argument of trial court error or provide pertinent supporting authority). As stated above, the doctrine of consentable lines requires proof of either: (1) dispute and compromise; or (2) recognition and acquiescence. BCHOA's brief, spanning two-and-a-half pages on the issue, does not mention either basis other than a passing use of the word "acquiesced." Appellant's Brief at 46. Moreover, BCHOA's reply brief is limited to effectively one sentence on the matter and a singular reference to "acquiescence." Appellant's

Reply Brief at 26. Although BCHOA has implicitly asserted *some* of the requirements espoused in **Moore** in support of a "recognition and acquiescence"-based consentable line, it fails to provide any cogent argument warranting reversal, especially under the appropriate standard of review, under Rule 1033, or under the law of the case, each of which is applicable here. Instead, BCHOA baldly argues that: (1) those owning 1 Bells Court (Basil, Marria, and then lastly, Appellees) acquiesced to the boundary separating it from the Parcel; (2) BCHOA's activities for more than twenty-one years established control and dominion of the Parcel; and (3) the onus was on the owners of 1 Bells Court to interrupt BCHOA's activities within the twenty-one year timeframe, but they failed to do so. **See** Appellant's Brief at 46-47. Even assuming proper presentment of its issue, BCHOA's surface-level attempt to demonstrate the applicability of the doctrine of consentable lines has hampered our review of the issue, and as such, we find waiver.[9] As neither of BCHOA's claims on appeal warrant relief, we affirm judgment in favor of the Appellees and against BCHOA.

_____

[9] Notwithstanding our finding of waiver, we highlight that, in rejecting BCHOA's claim, the trial court found BCHOA "did not occupy the Parcel, as is required to confer title under the [d]octrine of [c]onsentable [l]ines, but rather engaged in sporadic maintenance in tandem with Bells Court residents. [BCHOA] could not establish actual possession of the Parcel." Trial Court Opinion, 11/6/24, at 11. Given our earlier discussion involving Hutelmyer's recurrent and unencumbered activity on that land and the sporadic nature of BCHOA's use of the land, on the merits, we would discern no abuse of discretion.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/12/2025</u>